KELLY NOWELL SCOTT, Plaintiff-Appellee v. ROBERT EARL SCOTT,
Defendant-Appellant

No. COA02-508

(Filed 6 May 2003)

## 1. Child Support, Custody, and Visitation— modification of custody—substantial change in circumstances—child abuse

The trial court did not abuse its discretion in a child custody modification case by failing to find a substantial change in circumstances affecting the welfare of the parties' child based on the evidence showing the child did very well while he was with defendant father and by failing to make detailed findings regarding alleged child abuse arising out of an incident in which plaintiff mother spanked the child with a belt, because: (1) contrary to defendant's assertion, *Pritchard v. Pritchard*, 45 N.C. App. 189 (1980), does not mandate that a trial court must find a substantial change in circumstances, and this case is factually distinguishable when plaintiff and defendant resided in the same geographical area and the child continued to attend the same school and church; (2) the trial court found that defendant has a history of lacking the ability to control his temper when upset by his wife or children, and that defendant has verbally harassed plaintiff regarding custody matters; (3) there was evidence that the spanking did not inflict serious injury, defendant was aware of the spanking and did not attempt to seek medical attention for the child, and there was no evidence that the spanking left more than temporary red marks; and (4) even assuming arguendo that the spanking by plaintiff was abuse, the trial court specifically found that plaintiff's discipline of the child has been appropriate although the child has frequently challenged plaintiff's authority by physical and verbal intimidation.

## 2. Child Support, Custody, and Visitation— modification of custody—failure to hear testimony of child

Although defendant father contends the trial court erred in a child custody modification case by failing to hear testimony of the child and by allowing hearsay testimony to be admitted regarding what both parties believed the child would say, this assignment of error is overruled because: (1) the trial court never denied defendant the right to call the child as a witness but instead elected to hear from the child after hearing all other evi-

dence, and defendant failed to call the child to testify upon the close of all the evidence; and (2) defendant did not object to the hearsay testimony at trial, and he has not demonstrated on appeal how the admission of the hearsay testimony prejudiced him.

**3. Appeal and Error— preservation of issues—motion in limine—failure to object at trial**

Although defendant father contends the trial court erred in a child custody modification case by denying his motion in limine to exclude any evidence of events occurring prior to the 18 October 1999 order including evidence pertaining to instances of defendant's corporal punishment of the child prior to 23 September 1998, this assignment of error is overruled because: (1) defendant failed to object to the introduction of the evidence; and (2) a motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the movant fails to further object to that evidence at the time it is offered at trial.

**4. Contempt— civil—child custody order**

The trial court erred in a child custody modification case by holding defendant father in civil contempt of the parties' 18 October 1999 consent order, because: (1) defendant's actions preventing plaintiff mother from entering her vehicle and his abusive language in the presence of the children do not constitute a violation of the consent order provisions upon which plaintiff relies; and (2) the conditions in the order do not clearly specify what defendant can and cannot do in order to purge himself of the civil contempt.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 25 July 2001 by Judge Paul G. Gessner in Wake County District Court. Heard in the Court of Appeals 12 February 2003.

*J. Michael Weeks for plaintiff-appellee.*

*The Sandlin Law Firm, by Deborah Sandlin and John P. McNeil, for defendant-appellant.*

SCOTT v. SCOTT

[157 N.C. App. 382 (2003)]

LEVINSON, Judge.

## I. BACKGROUND

On 18 October 1999, the trial court incorporated the parties' separation agreement into a consent order (the "Consent Order") for child custody and support. On 10 May 2000, plaintiff filed motions seeking, *inter alia*, a show cause order for contempt. Defendant then filed a motion to modify custody of one of the parties' minor children (the "Child"). In conjunction with that motion, defendant also filed a motion *in limine* requesting the trial court to limit the evidence presented to only those events occurring after the 18 October 1999 court order. Subsequently, the matter was heard, and the trial court denied defendant's motion *in limine* and motion to modify custody, and found defendant in civil contempt. Defendant appeals. We affirm the trial court's denial of defendant's motions but reverse its finding of civil contempt.

Defendant's evidence tended to show: In March or April 2000, the Child began expressing a desire to live with defendant and his wife, and he came to live with them in the summer of 2000. In October of 2000, the parties entered into a parenting agreement whereby the Child lived with defendant from 1 November 2000 until 28 February 2001. Before coming to live with defendant, the Child had been suspended from school for fighting. He had also received poor marks on his report card. On 2 May 2000, the parties argued at a ballfield about plaintiff spanking the Child.

Plaintiff's evidence tended to show: The Child is healthy and has adapted well both socially and academically. Although he has had some behavioral problems, plaintiff has enjoyed the support of her immediate family in raising the Child. The Child has used his behavioral problems to gain favor with defendant. Additionally, defendant has, at times, been unable to control his temper, made intimidating phone calls to plaintiff, and verbally abused plaintiff at a baseball game where the Child was present.

## II. CUSTODY MODIFICATION

### A. Change in Circumstances

[1] Defendant first contends the trial court abused its discretion in failing to find a substantial change in circumstances affecting the welfare of the Child. He argues the evidence supports a finding contrary to that of the trial court.

SCOTT v. SCOTT

[157 N.C. App. 382 (2003)]

In child custody cases, the trial court has broad discretion, and it will not be upset absent a clear showing of an abuse of that discretion. *In re Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982); *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 97-98 (2000). However, the trial court's findings of fact must be supported by substantial evidence, and its conclusions of law are reviewable *de novo*. *Browning*, 136 N.C. App. at 423, 524 S.E.2d at 98.

The party moving for modification of an existing custody order must show there has been a substantial change in circumstances affecting the welfare of the child. N.C.G.S. § 50-13.7 (2001); *see also Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998) (discussing salutary and adverse effects upon a child). "If a substantial change in circumstances is shown, [then] the trial court must consider whether modification of the custody order would be in the best interest of the child." *Kowalick v. Kowalick*, 129 N.C. App. 781, 785, 501 S.E.2d 671, 674 (1998). We review defendant's assignments of error in accordance with these standards.

The trial court found in pertinent part:

28. The child . . . is very intelligent and does very well in school.

29. From time to time, [the Child] has had behavior problems at home and in school, some of which have resulted in his being disciplined by in school detention and suspension from school.

30. The Defendant has a history of lacking the ability to control his temper when upset by his wife or children.

31. The Plaintiff had enjoyed the support of her immediate family in rearing her children.

32. The Plaintiff's discipline of [the Child] has been appropriate although he has frequently challenged her authority by physical and verbal intimidation.

33. [The Child] has artfully manipulated his parent's estrangement to gain favor for himself with the Defendant and [his wife].

34. After several intimidating telephone calls made by the Defendant to the Plaintiff on November 28 and 29, 2000, the Plaintiff through her attorney demanded that he not call her anymore.

35. All communication since that date has primarily been through intermediaries or in writing.

36. On May 2, 2000, the Defendant verbally abused the Plaintiff at a baseball game in the presence of the parties' children and refused to allow her to get into her car with the children until Tim Britton intervened.

37. [The Child] has expressed that he would prefer to live with the Defendant father, but this appears to be part of his continuous effort to empower himself in his relationship with the parties.

Defendant contends the trial court should have found a change in circumstances because the evidence shows that the Child "did very well while he was with his father." Specifically, he claims that while in his custody the Child was better able to control his temper, communicated better, and did not need to take his anger management drug, clonodine. Defendant also points to stress and other illnesses resulting from plaintiff's custody of the Child. He essentially argues the Child experienced a social, emotional, and psychological blossoming while in his custody.

In addition to the beneficial changes in the Child's circumstances while in his custody, defendant contends plaintiff abused the Child on two different occasions, spanking him with such force as to leave red marks. Defendant also contends plaintiff emotionally abused the Child by enrolling him in an alternative school designed to educate troubled children.

Defendant relies heavily on this Court's opinion in *Pritchard v. Pritchard*, 45 N.C. App. 189, 262 S.E.2d 836 (1980) (*overruled on other grounds by Pulliam*, 348 N.C. 616, 501 S.E.2d 898). In *Pritchard*, the mother sent the child overseas on several occasions to reside with the father. *Id.* at 190, 262 S.E.2d at 837. As in the present case, there was evidence that the child had adapted and was performing well in school while in the care of the father, who sought a modification of custody. *Id.* at 191, 262 S.E.2d at 837. This Court affirmed the trial court's ruling that there was a substantial change in circumstances. *Id.*

Contary to defendant's argument, *Pritchard* does not mandate, under its facts or the current facts, that a trial court *must* find a substantial change in circumstances. Rather, *Pritchard* held the trial

court did not abuse its discretion in finding a substantial change in circumstances. *Id.* at 195-96, 262 S.E.2d at 840.

Furthermore, this case is factually distinguishable from *Pritchard*. Here, the plaintiff and defendant resided in the same geographical area and the Child continued to attend the same school and church. Additionally, the trial court found that "[d]efendant has a history of lacking the ability to control his temper when upset by his wife or children," and that defendant has verbally harassed plaintiff regarding custody matters.

Next, defendant argues the trial court erred in failing to make detailed findings regarding child abuse because there was "evidence presented at trial [that] conclusively shows" plaintiff "spanked [the Child] with such force as to leave red markings and welts across his back and buttocks." *See Dixon v. Dixon*, 67 N.C. App. 73, 312 S.E.2d 669 (1984) (holding trial court is obligated to resolve any evidence of child abuse in its findings of facts). In *Dixon*, there was evidence that the defendant abused the child by, among other things, jabbing him with a diaper pin. *Id.* at 78, 312 S.E.2d at 672. Multiple witnesses, including two former babysitters, defendant's own parents, and the Department of Social Services, substantiated the plaintiff's claims of child abuse. *Id.*

Here, the trial court heard testimony concerning an incident in which plaintiff spanked the Child with a belt. Defendant's evidence tended to show the spanking left red marks on the Child; however, there is also evidence that the spanking did not inflict serious injury. Defendant, when called by plaintiff to her house just after the spanking, took pictures of the Child's body. Although he was manifestly aware of the spanking, he made no attempt to seek medical attention for the Child, and there was no evidence that the spanking left more than temporary red marks. We are unpersuaded the evidence at trial "conclusively" showed abuse. *See* N.C.G.S. § 7B-101 (2001); *see also In re Mickle*, 84 N.C. App. 559, 353 S.E.2d 232 (1987) (holding father had not abused his daughter where on one occasion he whipped her with a belt and on another with a switch, in each instance leaving temporary marks and bruises on her buttocks and thighs).

Even assuming *arguendo* the spanking by plaintiff was abuse, the record reflects the trial court considered the relevant evidence and made findings of fact on this issue. *See Dixon*, 67 N.C. App. at 78, 312 S.E.2d at 673. The trial court specifically found "the Plaintiff's disci-

pline of [the Child] has been appropriate although he has frequently challenged her authority by physical and verbal intimidation."

Defendant presented his evidence to the trial court for consideration, and it, when sitting as the fact finder, is the sole judge of the credibility and weight to be given to the evidence. *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986). The trial court's findings are supported by competent record evidence. They are, therefore, binding on appellate review. *King v. Demo*, 40 N.C. App. 661, 668, 253 S.E.2d 616, 621 (1979). It is not the role of this Court to substitute its judgment for that of the trial court. Accordingly, we hold the trial court did not abuse its discretion in finding there had not been a substantial change in circumstances. Defendant's argument is overruled.

## B. The Child's Testimony

[2] Still arguing the trial court erred in failing to find a substantial change in circumstances, defendant next assigns as error the trial court's failure to hear testimony of the Child. The Child was subpoenaed to testify, and defendant attempted to call him as his first witness. The trial court declined to hear the Child's testimony at that time but stated:

Well, I will be as perfectly flexible as I can on that. And in the event that you elect to offer the child, I will hear from you all at the time, but my personal preference is to do everything, hear all the evidence from everybody involved. And then if you feel [it] necessary, then we can do it [in chambers]. And I can do it after school is out so he doesn't have to miss any school, or whatever you all want to do is fine with me.

I can hold off and bring him in—I mean, if you feel it's necessary to put the child on—I mean, you can elect one way or the other depending on how the evidence goes through the course of the hearing, and you may decide not to do it. But in the event—if you do decide[] to do it, I will do it in chambers after hours, school hours, after all the adults have testified.

After defendant's first witness was excused, counsel made a second attempt to call the Child; however, the trial court again stopped defendant and restated that it would hear from the Child at the end of all other evidence. The trial court added, "[a]nd I don't like to generally [sic] talk to the kids until I have heard from all the adults. That's

SCOTT v. SCOTT

[157 N.C. App. 382 (2003)]

what I said earlier. Let's get all the adults done and then tomorrow if you want to talk to him, I will talk to him."

Throughout the remainder of the trial, both parties allowed witnesses to testify as to matters the Child had said without objection. Presumably, both parties believed the Child would testify and therefore allowed the hearsay testimony to be admitted without objection. *See Best v. Best,* 81 N.C. App. 337, 344 S.E.2d 363 (1986) (*overruled on other grounds by Petersen v. Rogers* 337 N.C. 392, 445 S.E.2d 901 (1994)). Upon the close of all the evidence, defendant did not call the Child to testify. Specifically, the following exchange took place between Ms. Sandlin, defendant's counsel, and the trial court at the end of defendant's presentation of evidence:

The Court: Further evidence?

Ms. Sandlin: No further evidence, Your Honor.

(Defendant rests.)

Defendant now argues the trial court erred because it denied him the right to call the Child "without first making an independent inquiry into his" competency to testify. However, this argument is without merit. The trial court never denied defendant the right to call the Child as a witness. Rather, it elected to hear from the Child after hearing all other evidence. It is a long standing rule in North Carolina that the order of the presentation of witnesses is within the sound discretion of the trial court. *North Carolina State Bar v. Du Mont,* 52 N.C. App. 1, 23, 277 S.E.2d 827, 840 (1981); *Sheppard v. Sheppard,* 38 N.C. App. 712, 715, 248 S.E.2d 871, 874 (1978).

Furthermore, defendant's argument that the trial court erred in allowing the hearsay evidence also fails. Even over proper objection, the mere admission of incompetent hearsay testimony by the trial court does not mandate reversal. *In the Matter of X. Huff,* 140 N.C. App. 288, 301, 536 S.E.2d 838, 846 (2000). "Rather, the appellant must also show that the incompetent evidence caused some prejudice." *Best,* 81 N.C. App. at 341, 344 S.E.2d at 366. In the instant case, defendant did not object to the hearsay testimony at trial and he has not demonstrated on appeal how the admission of the hearsay testimony prejudiced him.[1] This assignment of error is overruled.

---

1. It appears from the record that defendant testified and the trial court recognized that "[the Child] has expressed that he would prefer to live with the Defendant father. . . ."

## III. MOTION *IN LIMINE*

**[3]** Third, defendant contends the trial court erred in denying his motion *in limine* to exclude any evidence of events occurring prior to the 18 October 1999 order. Specifically, defendant objects to the trial court's consideration of evidence pertaining to instances of his corporal punishment of the Child, all of which occurred prior to 23 September 1998.

During trial, defendant failed to object to the introduction of the evidence now assigned as error. " 'A motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the [movant] fails to further object to that evidence at the time it is offered at trial.' " *Martin v. Benson*, 348 N.C. 684, 685, 500 S.E.2d 664, 665 (1998) (quoting *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845-46, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995)). Thus, defendant's failure to object at trial negates his right to appellate review on this issue.

## IV. CONTEMPT

**[4]** Finally, defendant argues the trial court erred in holding him in civil contempt of the 18 October 1999 Consent Order for behavior occurring 2 May 2000. He argues, *inter alia*, (1) the Consent Order was vague, (2) the trial court failed to make necessary findings, including willful disobedience, and (3) his actions were justified and taken in good faith, negating any arguably contemptuous actions on his part.

The Motion for Show Cause Order for Contempt states:

7. The Defendant interfered with the Plaintiff's custody of [the children] by following the Plaintiff to her car as she attempted to leave the ball game and accusing her in the presence of [the Child] that all of [the Child's] problems were her responsibility.

8. When Plaintiff attempted to leave the game with her sons in the car, the Defendant further interfered with her custody of the children by opening the car door and telling his [other] son . . . to leave [the Child] alone and quit telling on him.

9. The Defendant then directed his hostility toward the Plaintiff in the presence of the children and prevented her from driving away from the ball game causing both of his sons and the Plaintiff to become very upset.

Based on these allegations, plaintiff presumably relies on one or more of the following provisions in the Consent Order:

> Husband and Wife recognize and appreciate the need for their Children to continue to have a loving and harmonious relationship with both of them. With this philosophy as the foundation for the provisions in this Agreement for the custody of the Children, Husband and Wife enter into this Agreement with the same spirit of co-operation regarding the care of their Children as has been their practice to date, but with the understanding that the provisions in this Agreement for custody and visitation are necessary in the event Husband and Wife, for whatever reason, can no longer co-operate on those matters involving their Children.
>
> A. Custody of Children.
>
> The Children shall be in the exclusive care, custody, and control of the Wife subject to Husband's right of visitation as set forth in this Agreement.
>
> B. Husband's Visitations.
>
> The Husband shall have the exclusive right to visit with the Children according to the following. . . .
>
> . . . .
>
> I. Parents' Communications About and With Children.
>
> The Parties shall confer with each other on all important matters pertaining to the Children's health, welfare and education with a view to arriving at a harmonious policy to promote the best interest of the Children. Neither party shall do anything to estrange either one or both of the Children from the other party, and both parties will endeavor to raise the Children with love and affection for each party. The parties agree to confer with each other about gifts for the Children on birthdays and Christmas. Neither party will give the Children a gift, provide entertainment or provide for any privilege with a value of greater than $30.00 per child without the consent of the other party.

Not unlike other custody arrangements, this Consent Order includes a plethora of other conditions dealing with pick-up and

SCOTT v. SCOTT

[157 N.C. App. 382 (2003)]

drop-off of the children, holiday visitation, and travel out-of-state.[2] Plaintiff essentially alleges, and the trial court found, that defendant "interfered with her custody" of the children by (1) verbally abusing her in the presence of the children, and (2) obstructing her entry into her car where the children were seated until a third party assisted.[3] Plaintiff contends this behavior, if supported by the evidence, amounts to civil contempt.

" 'In contempt proceedings[,] the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment.' " *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996) (quoting *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978)). Furthermore, the credibility of the witnesses is within the trial court's purview. *Id.* at 527, 471 S.E.2d at 420.

Concerning defendant's argument that the Consent Order was vague, we have strained to identify the provision(s) under which defendant was held in contempt. Indeed, this is not self-evident, and nothing in the Motion for Show Cause Order for Contempt, Order to Appear and Show Cause, or the final order finding defendant in contempt clarifies this matter.

Defendant relies on *Cox v. Cox*, 133 N.C. App. 221, 515 S.E.2d 61 (1999), to support his contention that the Consent Order was vague and therefore unenforceable through contempt. Defendant's reliance on *Cox*, however, is misplaced. The Consent Order here, which sets forth various custody and visitation provisions, is not at all vague. It manifestly vests custody in plaintiff, while awarding visitation rights to defendant.

With respect to contempt, the custody provisions upon which plaintiff presumably relies do not, in and of themselves, place any affirmative duty on defendant. Nor do they specifically prohibit him from taking any particular actions. Rather, the provisions, in large measure, declare and help define the plaintiff's custody rights.[4]

---

2. The custody and visitation provisions neither prohibit the parents from being in each other's presence during exchanges or any other times, nor precludes them from any particular locations, such as the ballfield where the events giving rise to the motion for contempt occurred.

3. Appellee does not argue that merely because the Consent Order granted "*exclusive* care, custody and control" to plaintiff on 2 May 2000, this gives rise to a valid motion and order of civil contempt on the facts of this case. (emphasis added).

4. The dissent accurately points out the Consent Order prohibits the parties from doing anything to "estrange either one or both of them from the other . . . ." The trial

Assuming, *arguendo*, that a pattern of similar conduct like that alleged herein can constitute "interference" and an actionable violation of an award of custody, this is not what is present here.[5] Finally, we note the plaintiff has pointed to no authority, and we have found none, that would allow the contempt order of the trial court to withstand defendant's challenges. Accordingly, we hold that defendant's actions preventing plaintiff from entering her vehicle and his abusive language in the presence of the children do not constitute a violation of the Consent Order provisions upon which plaintiff relies.

Additionally, defendant's vagueness argument has merit with respect to the trial court's *disposition*, wherein it ordered, in relevant part:

(F) The Defendant is in civil contempt of this Court for his actions and conduct toward the Plaintiff and the children on May 2, 2000;

(G) The Defendant shall be imprisoned in the Wake County Jail for civil contempt of this Court for thirty (30) days from the date of the filing of this Order; provided, however, the Defendant may postpone his imprisonment indefinitely by (1) enrolling in a Controlled Anger Program approved by this Court on or before August 1, 2001 and thereafter successfully completing the Program; *(2) by not interfering with the Plaintiff's custody of the minor children and* (3) by not threatening, abusing, harassing or *interfering with the Plaintiff or the Plaintiff's custody of the minor children*[.]

(emphasis added).

The purpose of civil contempt is to coerce the defendant to comply with a court order, not to punish him. *Bethea v. McDonald*, 70 N.C. App. 566, 570, 320 S.E.2d 690, 693 (1984). "A court order holding a person in civil contempt must specify how the person may purge himself or herself of the contempt." *Cox*, 133 N.C. App. at 226, 515 S.E.2d at 65; *see* N.C.G.S. § 5A-22(a) (2001). A defendant's failure to comply

court, however, clearly rests its decision on "interference" with plaintiff's "custody." There are no findings that the actions of defendant "estranged" the children from their mother. Of course, under appropriate circumstances and with a proper showing, actions that estrange the children from the other parent might support an order of contempt.

5. The trial court found "Defendant has a history of lacking the ability to control his temper when upset by his wife or children." Any events that occurred prior to the entry of the Consent Order cannot support contempt.

with a court order cannot be punished by contempt proceedings unless the disobedience is willful. *Ross v. Voiers*, 127 N.C. App. 415, 418, 490 S.E.2d 244, 246 (1997). Then, following from this concept, for civil contempt to be applicable, the defendant must have the present ability to comply with the court order. *See Cox*, 133 N.C. App. at 226, 515 S.E.2d at 65. Moreover, our Courts have required the trial court to make a specific finding as to the defendant's ability to comply during the period in which he was in default. *Id.*; *Adkins v. Adkins*, 82 N.C. App. 289, 346 S.E.2d 220 (1986).

Assuming, *arguendo*, that ordering defendant into an approved "Controlled Anger Program" comports with the ability of civil contemners to purge themselves, *Bethea*, 70 N.C. App. at 570, 320 S.E.2d at 693, and is related to coercing compliance with the previous order of the court, *see Cox*, 133 N.C. App. 221, 515 S.E.2d 61, the two requirements of the court's disposition order concerning *interference* are impermissibly vague. Like the order in *Cox*, these conditions do "not clearly specify what the defendant can and cannot do . . . in order to purge [himself] of the civil contempt." *Id.* at 226, 515 S.E.2d at 65.[6]

Though behavior like that exhibited by defendant cannot be condoned, we nevertheless hold it cannot sustain a finding of civil contempt on the facts of this case. We need not address appellant's remaining arguments concerning the order of civil contempt.

The trial court's order denying defendant's motion for modification of custody is affirmed. The order of civil contempt is reversed.

Affirmed in part, reversed in part, and remanded.

Judge WYNN concurs.

Judge TIMMONS-GOODSON concurs in part, dissenting in part.

TIMMONS-GOODSON, Judge, concurring in part and dissenting in part.

I agree with the majority that the trial court properly denied defendant's motions *in limine* and to modify custody. I disagree,

---

6. In her dissent, my colleague acknowledges the term "interfere with" is "open to interpretation" but would nevertheless hold this does not make the order impermissibly vague. On the contrary, it is wholly unclear what conduct "interfere with Plaintiff's custody" and/or "interfere with Plaintiff" does and does not include.

however, with the majority's conclusion that defendant's behavior did not constitute contempt as found by the trial court, and that the disposition by the trial court was impermissibly vague. I therefore dissent to the majority opinion in part.

The majority concludes that the custody provisions contained in the consent order between the parties place no affirmative duty on defendant. I disagree. The consent order places "exclusive care, custody, and control" of the children with plaintiff. The consent order further mandates that "neither party shall do anything to estrange either one or both of the children from the other party, and both parties will endeavor to raise the children with love and affection for each party." The failure of either party to abide by the terms of the consent order was expressly subject to the contempt powers of the court.

As noted by the majority, this Court's role on appeal of a contempt order is limited to a review of the evidence and findings "only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978). The evidence before the trial court tended to show, and the trial court so found, that on 2 May 2000, defendant "verbally abused the Plaintiff at a baseball game in the presence of the parties' children and refused to allow her to get into her car with the children until [a third individual] intervened." I conclude that this evidence adequately supports the trial court's conclusion that defendant violated the terms of the consent order.

I further disagree with the majority's conclusion that the trial court's disposition was impermissibly vague. The trial court declared that, in order to purge himself of the contempt order, defendant could enroll in and complete an anger management class. The trial court further ordered defendant not to threaten, abuse, harass or interfere with the plaintiff or her custody of the children. Although the term "interfere with" is admittedly somewhat open to interpretation, the remaining conditions are perfectly plain, and the order as a whole is not so impermissibly vague as to require reversal. *Compare Cox*, 133 N.C. App. at 226, 515 S.E.2d at 65 (reversing as impermissibly vague an order of contempt requiring the defendant not to "punish either of the minor children in any manner that is stressful, abusive, or detrimental to that child"). I would therefore affirm the order of the trial court in its entirety.