RANDY G. NEMCHIN, Plaintiff
v.
SANDRA A. NEMCHIN, Defendant.
No. COA08-107
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
Fields Law Firm, PLLC, by Amanda L. Fields, for plaintiff-appellee.
Hill Evans Jordan & Beatty, PLLC, by William W. Jordan and Robert E. Gray III, for defendant-appellant.
WYNN, Judge.
"[A] custody order may not be modified until the movant establishes that a substantial change in circumstances exists which affects the welfare of the minor child."[1] Here, Defendant Sandra Nemchin argues the trial court's conclusion that there were substantial changes of circumstance was not supported by sufficient findings of fact based on competent evidence. Because the record shows competent evidence to support the findings of fact, which in turn support the conclusion, we uphold the trial court's order.
Ms. Nemchin and Randy Nemchin are the biological parents of minor child B.N., born in 2002. The couple was married, but separated on 2 July 2004 and subsequently divorced on 20 September 2005. On 7 February 2005, Mr. Nemchin filed a complaint seeking joint legal and physical custody of the minor child because, since their separation, Ms. Nemchin had "consistently sought to prevent, or interfere with [Mr. Nemchin's] visitation with his daughter which is not in her best interest." On 25 April 2005, Mr. Nemchin filed a motion for temporary custody and, on 22 August 2005, a temporary order for child custody was entered, granting joint physical and legal custody, with Ms. Nemchin having primary physical custody. Subsequent to the 22 August 2005 order, additional orders were filed, including an order entered on 15 December 2005 disallowing unrelated overnight visitors of the opposite sex and an order entered 18 January 2006 amending the visitation schedule and setting the matter for further review. On 18 February 2006, Mr. Nemchin married Erika Wickstrom.
After a hearing in January 2006 to review the minor child's adjustment to increased time with Mr. Nemchin, the trial court filed a custody order on 20 June 2006. In that order, Judge Teresa H. Vincent found as fact that the minor child behaves differently with each parent due to different parenting styles. Specifically, when the minor child was with Mr. Nemchin, she was outgoing and active, did not drink from a bottle, and was regularly participating in potty training. When the minor child was with Ms. Nemchin, she drank milk from a bottle, wore diapers, and was quiet and less outgoing. Nevertheless, Judge Vincent found that "[t]heminor child is adjusting well to her new life with parents living in two separate households. It is appropriate and it would best promote the minor child's health and well-being for the minor child to have regular custodial time with [Mr. Nemchin]." Judge Vincent ordered joint physical and legal custody and that the minor child attend preschool no later than age four.
Mr. Nemchin and Ms. Nemchin disagreed whether the minor child should attend a part-time or full-time preschool program. Mr. Nemchin believed it was in the minor child's best interest "to begin attending the full-time program on a part-time, gradually increasing schedule . . . and then on a full-time basis thereafter." Ms. Nemchin believed that the minor child experienced anxiety while away from her, and felt that it was in the minor child's best interest to "attend the part-time program for an open-ended period of time to see how the minor child adjusts."
In an order entered on 6 October 2006, Judge Linda V. L. Falls found as fact that "[a]ttending the full-time structured educational environment at Brookhaven, which is similar to that of kindergarten, will better ensure that the minor child will be socially and educationally prepared to begin her formal education at the time she begins kindergarten." Thus, Judge Falls ordered that the minor child should be enrolled in the full-time preschool program for the duration of the 2006-2007 school year and that both parents be "responsible for ensuring that the minor child gets to class on time on their respective custodial days."
On 9 November 2006, Mr. Nemchin filed a motion in the cause to modify custody to grant him primary physical custody or substantially more time with the minor child, and to hold Ms. Nemchin in contempt for failing to abide by prior orders. On 6 December 2006, Ms. Nemchin filed a motion in the cause asking the court, inter alia, to deny Mr. Nemchin's motion to adjudicate her in contempt and grant Ms. Nemchin "the primary custody of the minor child, dissolve the joint legal custody status . . ., and award [Mr. Nemchin] visitation . . . on alternate weekends."
After a hearing on 29 May 2007, Judge Susan E. Bray entered an order modifying the 20 June 2006 order, granting Mr. Nemchin primary legal custody and control of the minor child, and granting Ms. Nemchin secondary legal custody. Judge Bray found as fact, inter alia:
7. The minor child has had difficulty arriving on time to school when she is at the Defendant Mother's home. The Defendant Mother did not support the decision to send the child to preschool in the first place and has exacerbated the separation anxiety for the minor child as she adjusts to school.
8. The child has not had those attendance or separation issues in any extreme when she is at the Plaintiff Father's home. . . .
12. [The minor child's] status as a kindergartner for the 2007-2008 school year necessitates the need for the Court to consider her best interests particularly in light of her education. This also is a material change in circumstance which affects the best interests of the minor child.
13. The parties' ongoing disagreements about [the minor child's] schedule, her after school experiences, the importance of her being on time for school are a material change in circumstance from the time Judge Vincent entered the original custody order.
The court concluded that "[t]here have been material changes in circumstance, as set forth in the findings of fact, affecting the health, education and welfare of the minor child . . . with those changes sufficient to merit a modification of custody."
On appeal from the 29 May 2007 order, in her first assignment of error Ms. Nemchin argues the trial court's conclusion that there were substantial changes of circumstance is erroneous because the evidence is insufficient to support the findings of fact. We disagree.
In reviewing a motion for modification of child custody, "the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. `Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations omitted).
Our courts have held that the modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances.
Ford v. Wright, 170 N.C. App. 89, 93, 611 S.E.2d 456, 459 (2005) (citations and quotations omitted); see also N.C. Gen. Stat. § 50-13.7(a) (2007). However, speculative or conjectural evidence that a substantial change, whether adverse or beneficial, may occur sometime in the future will not support a change in custody. Benedict v. Coe, 117 N.C. App. 369, 378, 451 S.E.2d 320, 325 (1994) (citation and quotations omitted); see also Brewer v. Brewer, 139 N.C. App. 222, 232, 533 S.E.2d 541, 549 (2000). Therefore, "[a] judgment awarding custody is based upon the conditions found to exist at the time it is entered." Stanback v. Stanback, 266 N.C. 72, 76, 145 S.E.2d 332, 335 (1965). Nonetheless, "[t]he court need not wait for any adverse effects on the child to manifest themselves before the court can alter custody. It is neither necessary nor desirable to wait until the child is actually harmed to make a change in custody." McConnell v. McConnell, 151 N.C. App. 622, 626-27, 566 S.E.2d 801, 805 (2002).
Here, inter alia, the trial court found that Mr. Nemchin's and Ms. Nemchin's disagreements about the minor child's preschool attendance, and the minor child's tardiness to preschool and separation anxiety when in Ms. Nemchin's custody, were material changes of circumstance, particularly in light of the minor child's status as a kindergartner for the 2007-2008 school year. After carefully reviewing the record, we conclude that competent evidence supports the trial court's fact findings, which reflect a substantial change of circumstance since entry of the 20 June 2006 custody order.
At the hearing prior to the 29 May 2007 order, the minor child's maternal grandmother testified that she took the minor child to preschool on mornings when Ms. Nemchin had to work, and despite her efforts, the minor child was sometimes late. Likewise, the minor child's preschool teacher, Carmen Bailey, also testified that Ms. Nemchin and/or her mother occasionally dropped the minor child off late. When the minor child was tardy, it was not possible to drop her off curbside using the car pool line, where preschool personnel greeted the children. Instead Ms. Nemchin or her mother had to walk the minor child into the school. Ms. Bailey testified that the car pool line helped to ease a child's separation anxiety; "[i]t's easier to let go of mom in the car than it is coming in." This testimony is competent evidence supporting findings of fact in the trial court's 29 May 2007 order.
Furthermore, the testimony reflects a substantial change of circumstance from the 20 June 2006 order. As of 20 June 2006, the minor child had not begun preschool. During the 2006-2007 school year, Ms. Nemchin and her mother caused the minor child to be tardy to preschool on many days, and otherwise contributed to the minor child's separation anxiety. By entry of the 29 May 2007 order, the minor child had nearly completed preschool and her entry into kindergarten was approaching. Thus, the trial court had sufficient evidence before it, and properly considered the minor child's tardiness and continuing separation anxietyparticularly considering her approaching entry into kindergartenas a substantial change of circumstance affecting the best interests of the minor child. Competent evidence was before the trial court showing that a substantial change of circumstances had occurred between entry of the 20 June 2006 and 29 May 2007 orders.
Moreover, North Carolina's appellate courts have previously acknowledged furtherance of a minor child's educational growth as a basis for modification of a custody order. See Spence v. Durham, 283 N.C. 671, 686, 198 S.E.2d 537, 546 (1973) (mother's increased attentiveness to children's schooling was one of several substantial changes of circumstance justifying custody modification), cert. denied, 415 U.S. 918, 39 L. Ed. 2d 473 (1974); Scott v. Scott, 157 N.C. App. 382, 386-87, 579 S.E.2d 431, 434-35 (2003) (recognizing that evidence that a child performs well in school in the custody of one parent may, in the discretion of the trial court, be a substantial change of circumstance supporting modification); Dean v. Dean, 32 N.C. App. 482, 483, 232 S.E.2d 470, 471 (1977) (finding that mother's failure to take minor child to Sunday School and Church were among changed circumstances supporting modification of custody order). Accordingly, this assignment of error is overruled.
In her final assignment of error, Ms. Nemchin argues that the trial court's conclusion that it is in the minor child's best interests for Mr. Nemchin to have primary legal custody is not supported by sufficient findings of fact. However, we have already concluded that substantial evidence supports the findings of fact in the trial court's 29 May 2007 order. Furthermore, the trial court specifically found that it "is important and in the best interests of the minor child . . . that she have a day-to-day custody arrangement designed to give her the structure and consistency during the school week to maximize her school performance." Where its findings of fact are supported by substantial evidence, "the trial court has broad discretion, and it will not be upset absent a clear showing of an abuse of that discretion." Scott, 157 N.C. App. at 385, 579 S.E.2d at 433 (citations omitted). We cannot conclude that the trial court abused its discretion here. This assignment of error is also overruled.
Affirmed.
Chief Judge MARTIN and Judge HUNTER concur.
Report per Rule 30(e).
NOTES
[1] McConnell v. McConnell, 151 N.C. App. 622, 626, 566 S.E.2d 801, 805 (2002) (citation omitted).