IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-94

No. 489A20

Filed 27 August 2021

IN THE MATTER OF: A.S.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 7 August 2020 by Judge Wesley W. Barkley in District Court, Caldwell County. This matter was calendared for argument in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Lucy R. McCarl for petitioner-appellee Caldwell County Department of Social Services.*
>
> *Matthew P. McGuire for appellee Guardian ad Litem.*
>
> *David A. Perez for respondent-appellant mother.*

MORGAN, Justice.

Respondent, the mother of the juvenile A.S.D. (Amanda),[1] appeals from the trial court's order terminating her parental rights. After careful review, we affirm.

## I. Factual Background and Procedural History

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

¶ 2        On 4 December 2018, the Caldwell County Department of Social Services (DSS) filed a petition alleging that Amanda, who was less than two weeks old, was a neglected and dependent juvenile. DSS stated that it was currently involved with Amanda's half-brother, D.D., who was in DSS custody. DSS claimed that respondent-mother had an extensive history of mental illness, had been diagnosed with several mental health disorders, and had a history of "polysubstance abuse." DSS additionally alleged that respondent-mother did not have safe, stable housing and that respondent-mother had reported to hospital staff that she had been ousted from the home that she shared with Amanda's father and had nowhere to stay. DSS also claimed that respondent-mother had been involved in "multiple violent relationships" and had several criminal convictions. DSS stated that respondent-mother had placed Amanda in a kinship placement in the same home as D.D.

¶ 3        On 6 March 2019, the trial court adjudicated Amanda to be a neglected and dependent juvenile based upon respondent-mother's stipulations to the allegations contained within the juvenile petition. In a separate dispositional order, the trial court ordered that custody of Amanda be placed with DSS and that DSS have the authority to arrange a placement for the juvenile. The trial court further ordered respondent-mother to enter into an Out-of-Home Safety Agreement as her case plan and allowed respondent-mother to engage in supervised visitation with Amanda for one hour each week.

¶ 4        The trial court entered a permanency planning order on 30 May 2019 in which it found that respondent-mother was not consistently attending mental health or substance abuse treatment and did not have stable housing. The trial court set the primary permanent plan as reunification with a secondary plan of adoption.

¶ 5        In a permanency planning review order entered on 3 October 2019, the trial court found as fact that respondent-mother had not attended mental health services since January 2019. The trial court additionally found that respondent-mother was not receiving substance abuse treatment and that respondent-mother refused to submit to hair follicle drug screens because she "believes that such may result in the use of Black Magic on her hair." The trial court also found as fact that respondent-mother still did not have stable housing.

¶ 6        On 5 March 2020, the trial court filed a permanency planning review order in which the trial court found that DSS had made numerous attempts to administer drug screens to respondent-mother, but that such attempts were often unsuccessful— such as on 25 November 2019 and 7 February 2020 when respondent-mother refused to come to the door on both occasions. The trial court also found that respondent-mother was living in a mobile home with her boyfriend, and that respondent-mother was unemployed because her boyfriend did not want respondent-mother to work and was paying respondent-mother $100 per week to complete chores around the home rather than have her to seek employment. The trial court further found as fact that

respondent-mother had not visited with the juvenile since respondent-mother had refused a drug screen on 14 October 2019. The trial court changed the primary permanent plan for Amanda to adoption and the secondary plan to guardianship with an approved caretaker.

¶ 7    On 12 March 2020, DSS filed a motion in the cause to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (9), based on neglect, willful failure to make reasonable progress, and the fact that respondent-mother's parental rights with respect to another child had been terminated involuntarily and respondent-mother lacked the ability or willingness to establish a safe home. N.C.G.S. § 7B-1111(a)(1), (2), (9) (2019). On 7 August 2020, the trial court entered an order in which it determined that grounds existed to terminate respondent-mother's parental rights as alleged in the motion. The trial court further concluded that it was in Amanda's best interests that respondent-mother's parental rights to Amanda be terminated. Accordingly, the trial court terminated respondent-mother's parental rights.[2] Respondent-mother appeals.

## II.    Analysis

---

[2] The trial court's order also terminated the parental rights of Amanda's father. He is not a party to the proceedings before this Court.

¶ 8 Respondent-mother argues that the trial court erred by concluding that grounds existed to terminate her parental rights. A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110 (1984). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under subsection 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(e), (f). We review a trial court's adjudication "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. at 111 (citing *In re Moore*, 306 N.C. 394, 404 (1982)).

¶ 9 "[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395 (2019). We begin our analysis with the consideration of whether grounds existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

¶ 10 Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). "[T]he willfulness of a parent's failure to make reasonable progress toward correcting the

conditions that led to a child's removal from the family home 'is established when the [parent] had the ability to show reasonable progress, but was unwilling to make the effort.'" *In re L.E.W.*, 375 N.C. 124, 136 (2020) (second alteration in original) (quoting *In re Fletcher*, 148 N.C. App. 228, 235 (2002)).

In support of its adjudication of grounds pursuant to N.C.G.S. § 7B-1111(a)(2)[3], the trial court made the following findings of fact:

> 14. . . .
>
>> a. Respondent[-]mother has an extensive history of substance abuse for which she has received inadequate treatment. She received an updated Comprehensive Clinical Assessment (CCA) on January 27, 2020. She was recommended to complete 90 hours of Substance Abuse Intensive Outpatient Treatment (SAIOP). She has only attended a few classes.
>>
>> b. Respondent[-]mother has submit[ted] to urine drug screens as requested by the Movant on 5/1/19, 5/15/19, and 6/19/19. She refused to submit to a hair follicle drug screen on 9/5/19 and again in January of 2020. She has on numerous other occasions not made herself available for drug screens. She has never had a consistent six (6) month period of negative drug screens.

---

[3] We note that Finding of Fact 14 and its subparts were in reference to the grounds to terminate respondent-mother's parental rights for neglect pursuant to N.C.G.S. § 7B-1111(a)(1), but the findings also demonstrate respondent-mother's failure to make reasonable progress in correcting the conditions which led to Amanda's removal, which supports the trial court's determination that grounds existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

c. Respondent[-]mother completed a psychological evaluation with Dr. Jennifer Cappelletty. Dr. Cappelletty diagnosed Respondent[-]mother with Schizoaffective Disorder, Bipolar Type; Cannabis Use Disorder; Stimulant Use Disorder – Amphetamine Type; and Opioid Use Disorder. Dr. Cappelletty made the following recommendations for Respondent[-]mother: (a) participate in psychotherapy; (b) participate in a psychiatric evaluation and comply with all recommendations; (c) participate in the Assertive Community Treatment Team (ACTT) program; (d) refrain from use of non-prescribed substances; and (e) participate in Vocational Rehabilitation Services. Respondent[-]mother has refused to take any prescription medication to address her mental health issues. In addition to the psychological evaluation by Dr. Cappelletty, Respondent[-]mother has completed 4 or 5 other mental health assessments. She has not addressed any of the issues identified by Dr. Cappelletty. She has not completed any mental health treatment. She did not participate in the ACTT program. She did not participate in Vocational Rehabilitation Services.

d. Respondent[-]mother has lived a transient lifestyle during the course of her involvement with the Movant up until the last few months. She has moved at least six (6) times since the birth of the juvenile. She currently lives with a boyfriend and is totally dependent upon him. She is unemployed and has had only sporadic employment during her involvement with the Movant. She exhibited no consistency from February 2019 to March 2020. The brief period of stability during the last few months does not outweigh the year of instability during which her environment shifted on a monthly basis.

e. Respondent[-]mother has not visited with the juvenile since October 14, 2019, due to her refusal to submit to drug screens.

f. Respondent[-]mother has a history of domestic violence for which she has received no treatment.

. . . .

16. Grounds exist to terminate the parental rights of Respondent[-]mother pursuant to N.C.G.S. § 7B-1111(a)(2). The juvenile has been willfully left in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the Court that outside of consideration of poverty, reasonable progress under the circumstances has been made [in] correcting the conditions which led to the removal of the juvenile. Specifically, Respondent[-]mother has not completed any of the objectives of her case plan with [DSS] or complied with the prior orders of the court in order to reunify with the juvenile. She demonstrated no consistency for a period in excess of a year.

"Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). Furthermore, this Court limits its review of findings of fact "to those challenged findings that are *necessary* to support the trial court's determination that . . . parental rights should be terminated." *In re N.G.*, 374 N.C. 891, 900 (2020) (emphasis added).

Respondent-mother challenges several of the trial court's findings of fact. First, respondent-mother disputes Finding of Fact 14(a), arguing that there was no evidence to show that substance abuse was a continuing issue at the time of the

termination of parental rights hearing.[4] We are not persuaded by this argument. In this finding, contrary to respondent-mother's assertion, the trial court did not purport to determine that respondent-mother was continuing to use drugs at the time of the hearing; rather, the trial court found that respondent-mother had an extensive history of substance abuse for which she received inadequate treatment. This finding is supported by the evidence of record. We note that respondent-mother stipulated to the allegations in the juvenile petition that she had "an extensive history of polysubstance abuse [and] a long history of using methamphetamines, benzodiazepines, opiates, and marijuana, as well as other substances." Additionally, a DSS social worker testified at the termination hearing that respondent-mother had an extensive history of substance abuse and that respondent-mother did not complete the required substance abuse treatment. The trial court also observed that respondent-mother was referred to intensive outpatient treatment but attended only a few classes. Respondent-mother does not challenge this finding of fact on appeal, and therefore it is deemed to be binding on this Court. *In re T.N.H.*, 372 N.C. at 407. Furthermore, we recognize that Dr. Cappelletty stated in her psychological evaluation of respondent-mother that, in her opinion, "the combination of [respondent-mother's] severe and chronic mental illness *and her history of substance*

---

[4] Respondent-mother makes additional arguments regarding Finding of Fact 14(a), but we do not address them because they are not relevant to grounds for termination under N.C.G.S. § 7B-1111(a)(2). *In re N.G.*, 374 N.C. 891, 900 (2020).

*abuse* has combined in such a way as to have a significant impact on her capacity to maintain stability and effectively parent." Also, on several occasions, respondent-mother refused drug screens and hair follicle tests. Thus, there is clear, cogent, and convincing evidence to support Finding of Fact 14(a).

¶ 13       Next, respondent-mother contends that the portion of Finding of Fact 14(b) that she had "on numerous other occasions not made herself available for drug screens" is not supported by the evidence. We disagree with this contention. The DSS social worker testified that respondent-mother refused to participate in drug screens on 1 May, 15 May, 19 June, and 14 October 2019. Additionally, respondent-mother refused to participate in hair follicle tests on 5 September 2019 and 6 January 2020. Consequently, we conclude that clear, cogent, and convincing evidence supports this finding of fact.

¶ 14       Respondent-mother further contends that Finding of Fact 14(d), which states that she exhibited "no consistency from February 2019 to March 2020," is erroneous. As support for her stance, respondent-mother cites the testimony of the DSS social worker that respondent-mother had maintained stable housing since December 2019, and that her "home was appropriate, clean and had space for Amanda were she to be returned." Respondent-mother does not challenge, however, the portions of the trial court's Finding of Fact 14(d) that respondent-mother had lived a "transient lifestyle" during the course of the case and had moved at least six times since Amanda was

born, that respondent-mother was unemployed and only had sporadic employment during the course of the case, and that respondent-mother lived with her boyfriend and was "totally dependent" upon him. Furthermore, the evidence of record showed that respondent-mother had moved multiple times during the course of the case, was not employed at the time of the termination of parental rights hearing, and had not been employed since losing her job in June 2019. Respondent-mother also acknowledged at the termination hearing that she was completely dependent upon her boyfriend. The trial court favorably noted that respondent-mother had exhibited a "brief period of stability during the last few months," but nonetheless still assessed that this positive stint did not "outweigh the year of instability during which her environment shifted on a monthly basis." We conclude that the trial court's finding that respondent-mother did not exhibit consistency from February 2019 to March 2020 was a permissible inference available to the trial court based upon the evidence and unchallenged findings of fact. *See In re D.L.W.*, 368 N.C. 835, 843 (2016) (stating that it is the trial court's duty to consider all the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom); *see also Scott v. Scott,* 157 N.C. App. 382, 388 (2003) (stating that when the trial court sits as fact-finder, it is the sole judge of the credibility and weight to be given to the evidence, and it is not the role of the appellate court to substitute its judgment for that of the trial court).

¶ 15        Respondent-mother maintains that Finding of Fact 14(e) is erroneous because she visited with Amanda in March 2020. Respondent-mother claims that she was eligible to visit earlier but could not do so because Amanda was out of town. We agree with respondent-mother on this point. The DSS social worker testified that respondent-mother had not visited with Amanda since October 2019 because respondent-mother "had to pass two [drug] screens" before she would be permitted visitation. The social worker further went on to testify, however, that respondent-mother passed drug screens in January 2020 and was eligible to visit with the juvenile during that month but could not do so because Amanda went with her "foster family . . . on a trip to California." The trial court's Finding of Fact 14(e) does not properly reflect the evidence submitted at the termination of parental rights hearing, and hence we disregard this finding of fact. *See In re S.M.*, 375 N.C. 673, 684 (2020).

¶ 16        We next consider respondent-mother's representation that a segment of Finding of Fact 16 is erroneous in its establishment that she had not completed any objectives of her case plan or complied with the prior orders of the trial court in order to reunify with Amanda, and that respondent-mother had demonstrated no consistency for a period in excess of twelve months. We begin by recalling that we have already determined that there was sufficient evidence to support Finding of Fact 14(d) that respondent-mother exhibited "no consistency from February 2019 to March

2020," and likewise conclude that the same evidence supports the trial court's similar finding regarding respondent-mother's lack of consistency in Finding of Fact 16.

¶ 17    As for the balance of Finding of Fact 16, we conclude that there was clear, cogent, and convincing evidence to support the trial court's finding. First, respondent-mother admitted at the termination of parental rights hearing that she did not do anything toward completing her case plan other than working, and that she was unemployed by the time of the termination hearing. Second, we have found that there was sufficient evidence to sustain the trial court's findings of fact that respondent-mother did not always make herself available for drug screens, that she did not complete substance abuse treatment, and that she did not complete any mental health treatment. Furthermore, while the trial court acknowledged that at the time of the termination of parental rights hearing respondent-mother had a brief period of stability with regard to housing, nonetheless she had previously been transient, and the trial court thereupon determined that respondent-mother's short period of stability did not outweigh her lengthy period of instability. Therefore, Finding of Fact 16 is properly supported by the record.

¶ 18    Respondent-mother argues that the trial court erroneously concluded that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate her parental rights. Although respondent-mother concedes that she was slow to address many components of her case plan, respondent-mother contends that she made reasonable

progress and rectified the issues which led to Amanda's removal from respondent-mother's care by the time of the termination of parental rights hearing. We are not persuaded by these representations of respondent-mother.

This Court has recognized that "parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)." *In re B.O.A.*, 372 N.C. 372, 384 (2019). A trial court should refrain from finding that a parent has failed to make reasonable progress in correcting the conditions that led to the child's removal "simply because of his or her 'failure to fully satisfy all elements of the case plan goals.'" *Id.* at 385 (quoting *In re J.S.L.*, 177 N.C. App. 151, 163 (2006)). However, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.*

Here, respondent-mother admits that Amanda has resided in foster care or placement outside of the home for more than twelve months. However, respondent-mother asserts that she made reasonable progress toward correcting the conditions which led to Amanda's removal from her care. This contention is without merit. Respondent-mother's case plan was directed at resolving her issues concerning substance abuse, mental health, and instability. The case plan also aimed at

addressing respondent-mother's lack of stable, safe housing. The evidence in the record, which yielded the trial court's supported findings of fact, demonstrates that respondent-mother largely failed to comply with her case plan. Significantly, although it was recommended that respondent-mother complete ninety hours of intensive outpatient substance abuse treatment, she only attended a few classes and failed to complete the treatment. Respondent-mother also failed to complete mental health treatment and refused to take any prescription medication to address her mental health issues. In like manner, respondent-mother demonstrated continued instability during most of the course of this case; she was consistently transient and unable to maintain stable employment. Respondent-mother remained completely dependent upon her boyfriend, even up to the time of the termination hearing. Although respondent-mother cites progress made by her just prior to the termination of parental rights hearing, it was within the trial court's authority to decide that these improvements were insufficient in light of the historical facts of the case. *See In re T.M.L.*, 2021-NCSC-55, ¶ 32 (concluding that while the respondent "made some last-minute attempts to comply with the case plan by the time of the termination hearing . . . [his] partial steps—undertaken after DSS had filed petitions to terminate his parental rights and two years or more after the children's removal from the home— [were] insufficient to constitute reasonable progress under N.C.G.S. § 7B-1111(a)(2)"); *see also In re O.W.D.A.*, 375 N.C. 645, 654 (2020) (concluding that, with

respect to grounds to terminate parental rights under N.C.G.S. § 7B-1111(a)(1), that although the respondent may have made some recent, minimal progress, "the trial court was within its authority to weigh the evidence and determine that these eleventh-hour efforts did not outweigh the evidence of his persistent failures to make improvements . . . and to conclude that there was a probability of repetition of neglect."). Consequently, we hold that the trial court did not err by concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-mother's parental rights.

### III.    Conclusion

The trial court's conclusion that a ground for termination existed pursuant to N.C.G.S. § 7B-1111(a)(2) is sufficient in and of itself to support termination of respondent-mother's parental rights. *In re E.H.P.*, 372 N.C. at 395. As such, we do not need to address her arguments regarding N.C.G.S. § 7B-1111(a)(1) and (9). Respondent-mother does not challenge the trial court's conclusion that termination of her parental rights was in Amanda's best interests. *See* N.C.G.S. § 7B-1110(a). Accordingly, we affirm the trial court's order terminating the parental rights of respondent-mother.

AFFIRMED.