DAVIS, Judge.
 

 *229
 
 This appeal raises several issues in connection with the divorce of Kimberly and Mark Kenneth Summerville. The questions specifically before us are whether the trial court erred by (1) modifying the parties' child custody arrangement despite the absence of sufficient evidence of a substantial change in circumstances; (2) making a
 
 sua sponte
 
 modification of Mr. Summerville's existing child support award; (3) holding Mr. Summerville in contempt for his violations of prior court orders; and (4) awarding attorneys' fees to Ms. Summerville without making necessary findings that the fees awarded were reasonable. After a thorough review of the record and applicable law, we affirm in part, vacate in part, and dismiss this appeal in part.
 

 Factual and Procedural Background
 

 The parties were married on 30 June 2001. One child ("Aaron")
 
 [1]
 
 was born of the marriage. Aaron was diagnosed with autism when he was in the first grade.
 

 *230
 
 The parties separated on 15 August 2011 and divorced on 26 August 2013. On 12 August 2013, the parties entered into a consent custody order (the "12 August 2013 Order") in which they agreed to joint legal custody and equal physical custody of Aaron.
 

 On 10 February 2015, Ms. Summerville filed a motion in the cause in Chatham County District Court asserting that Mr. Summerville was in violation of the 12 August 2013 Order because he had not provided appropriate medicine and therapy for Aaron. In her motion, she requested that Mr. Summerville be held in contempt for his violations of the order.
 

 A hearing was held on 3 March 2015 before the Honorable James T. Bryan, III, and an order captioned "Temporary Custody, Visitation Order, and Contempt Order" (the
 
 *891
 
 "1 May 2015 Order") was subsequently entered. In this order, Judge Bryan found that Mr. Summerville had failed to provide prescription medicine for Aaron, repeatedly questioned the therapeutic approach taken by Aaron's therapist, and failed to bring Aaron to therapy 43% of the time.
 

 Based on his findings, Judge Bryan determined a substantial change in circumstances had occurred that warranted modification of the 12 August 2013 Order, and he awarded Ms. Summerville "sole legal medical decision-making [authority] in the area of any medical care for the minor child ...." The parties retained joint legal custody, but the court modified the parties' physical custodial schedule. On 19 June 2015, the parties signed a consent order in which they agreed that Mr. Summerville would pay 60% of Ms. Summerville's attorneys' fees related to the filing of her 10 February 2015 motion.
 

 On 4 March 2016, Mr. Summerville filed a motion to modify custody, alleging in pertinent part that Aaron had been "encouraged to defy [Mr. Summerville's] authority while ... in [his] care" and "has spent an increasing amount of time out of the classroom due to the interventions by [Ms. Summerville] ...." Mr. Summerville's motion requested that the trial court grant him primary physical and sole legal custody.
 

 On 14 March 2016, Ms. Summerville filed a motion in the cause and a motion for a show cause order. In her motion, she requested that the trial court hold Mr. Summerville in contempt based on his repeated failures to comply with the court's orders. She alleged, in part, that Mr. Summerville had failed to give Aaron his medications, discouraged Aaron from using coping mechanisms recommended by his therapist, and refused to allow Aaron to call Ms. Summerville while in Mr. Summerville's care. Her motion requested that the court grant her primary physical and sole legal custody of Aaron and order Mr. Summerville to pay her attorneys' fees.
 

 *231
 
 Hearings were held in June 2016 and October 2016 before the Honorable Lunsford Long on the parties' pending motions. On 16 December 2016, the trial court entered an order (1) awarding primary physical and sole legal custody of Aaron to Ms. Summerville; (2) modifying Mr. Summerville's child support obligation; and (3) holding Mr. Summerville in contempt for his violations of the 1 May 2015 Order.
 

 On 20 December 2016, the trial court entered an order requiring Mr. Summerville to pay $42,220 in attorneys' fees to Ms. Summerville with regard to her defense of his motion to modify custody. On 30 December 2016, the trial court entered an order captioned "Amendment of Judgment/Order" in which it clarified its 16 December 2016 order by stating its determination that criminal contempt-as opposed to civil contempt-was appropriate based on Mr. Summerville's conduct. On 13 January 2017, Mr. Summerville filed a notice of appeal as to all three orders.
 

 Analysis
 

 I. Modification of Child Custody
 

 In his first argument, Mr. Summerville contends that the trial court lacked the authority to modify the parties' custody of Aaron absent sufficient evidence and accompanying findings of a substantial change in circumstances since the 1 May 2015 Order was entered. "When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence."
 
 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 474,
 
 586 S.E.2d 250
 
 , 253 (2003) (citation omitted). If so, we "must determine if the trial court's factual findings support its conclusions of law."
 
 Id.
 
 at 475,
 
 586 S.E.2d at 254
 
 (citation omitted). "The issue of whether a trial court has utilized the correct legal standard in ruling on a request for modification of custody is a question of law that we review
 
 de novo
 
 ."
 
 Hatcher v. Matthews
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 499
 
 , 501 (2016) (citation omitted).
 

 Our Supreme Court has made clear that "[o]ur trial courts are vested with broad discretion in child custody matters."
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 (citation omitted). "Accordingly, should we conclude that there is substantial evidence in
 
 *892
 
 the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary."
 
 Id.
 
 at 475,
 
 586 S.E.2d at 253-54
 
 (citation and quotation marks omitted).
 
 *232
 

 A. Classification of Prior Custody Order as Permanent or Temporary
 

 As an initial matter, we must determine whether the 1 May 2015 Order was a permanent or temporary custody order. The distinction is important because
 

 [i]f a child custody order is final, a party moving for its modification must first show a substantial change of circumstances. If a child custody order is temporary in nature ... the trial court is to determine custody using the best interests of the child test without requiring either party to show a substantial change of circumstances.
 

 LaValley v. LaValley
 
 ,
 
 151 N.C. App. 290
 
 , 292,
 
 564 S.E.2d 913
 
 , 914-15 (2002) (internal citations and footnote omitted).
 

 We observe that the 1 May 2015 Order was labeled by Judge Bryan as a temporary order. Mr. Summerville contends, however, that the order should nevertheless be deemed a permanent one. We agree.
 

 "The issue of whether an order is temporary or final in nature is a question of law that is reviewed
 
 de novo
 
 on appeal."
 
 Hatcher
 
 , --- N.C. App. at ----,
 
 789 S.E.2d at 502
 
 (citation omitted). An order is temporary "if either (1) it is entered without prejudice to either party; (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues."
 
 Smith v. Barbour
 
 ,
 
 195 N.C. App. 244
 
 , 249,
 
 671 S.E.2d 578
 
 , 582 (citation, quotation marks, and brackets omitted),
 
 disc. review denied
 
 ,
 
 363 N.C. 375
 
 ,
 
 678 S.E.2d 670
 
 (2009). "If an order does not meet any of these criteria, it is considered permanent."
 
 Hatcher
 
 , --- N.C. App. at ----,
 
 789 S.E.2d at 502
 
 (citation omitted). Our case law demonstrates that "[a] trial court's designation of an order as 'temporary' or 'permanent' is not dispositive or binding on an appellate court."
 

 Id.
 

 at ----,
 
 789 S.E.2d at 502
 
 (citation omitted).
 

 Despite Judge Bryan's labeling of the 1 May 2015 Order as a "temporary order," it does not meet any of the characteristics that would make it so. It was not entered without prejudice to either party. Nor did it state a date for the parties to reconvene. Finally, the order did, in fact, determine all of the issues before the court at that time.
 

 Thus, the 1 May 2015 Order was a permanent custody order. As such, the trial court was authorized to determine whether a modification of custody was in Aaron's best interests only if it first determined that there had been a substantial change in circumstances since the 1 May
 
 *233
 
 2015 Order was entered.
 
 See
 

 LaValley
 
 ,
 
 151 N.C. App. at 292
 
 ,
 
 564 S.E.2d at 914-15
 
 (holding that permanent custody orders require party moving for modification to show substantial change in circumstances before proceeding to best interests analysis).
 

 B. Substantial Change in Circumstances
 

 Mr. Summerville contends that the trial court in its 16 December 2016 Order erroneously found a substantial change in circumstances because it (1) improperly examined events occurring before the 1 May 2015 Order was entered in assessing whether a substantial change in circumstances had occurred; and (2) failed to directly link any change in circumstances to an actual effect on the welfare of the minor child. We disagree.
 

 In this order, the trial court made the following pertinent findings of fact:
 

 47.... [T]he Court was very clear to [Mr. Summerville], by explicitly including in its 2015 Order that should he continue to fail to follow Dr. Meisburger's behavior plan and safety rules (as amended/modified) that would constitute a substantial change in circumstances affecting the welfare of the minor child which might result in a modification of his custodial rights.
 

 ....
 

 63. Due to [Mr. Summerville]'s ongoing refusal to support the minor child's
 
 *893
 
 therapy and therapeutic strategies and recommendations after the May 2015 Order, Dr. Meisburger recently discontinued treating the minor child. As a result, the minor child lost his therapist of several years, with whom he had formed a trusting and therapeutic bond. As a result, the minor child must begin all over again bonding with and trusting a new therapist. This process is more difficult for the minor child due to his Autism diagnosis, thus this has negatively impacted the minor child after the entry of the last Court Order.
 

 ....
 

 78. [Mr. Summerville]'s failure to follow the behavior plan and Safety Rules distressed the minor child[,] increased the child's anxiety and made him feel unsafe.
 

 *234
 
 Further, [Mr. Summerville]'s disregard of the Safety Rules, the therapist's recommendations, the Parenting Coordinator's decisions, and the Court's Order modeled to the minor child a flagrant disregard for authority and rules. [Mr. Summerville]'s actions negatively impacted the minor child's therapeutic progress.
 

 79. The child's progress has been limited by the professional recommendations being consistently implemented only during [Ms. Summerville]'s custodial time, but not [Mr. Summerville]'s.
 

 ....
 

 81. A significant psychiatric concern is the minor child's memory loss of events which are frightening to him, which is dissociation, a self-protective strategy the child uses when he feels unsafe. For instance, a physical and verbal altercation occurred in March 2016 between the minor child and [Mr. Summerville] over the course of two hours outside of a scouting event. The minor child's therapist heard the entire, approximately two hour recording. During the call, the minor child screamed, wailed loudly, and begged [Ms. Summerville] to pick him up. During the call, the minor child reported that [Mr. Summerville] had hit him on the head, kicked him, and thrown him to the ground, during which the child had hurt his head and scraped his elbow. However, [Mr. Summerville] refused to allow [Ms. Summerville] to pick up the child. By the next day, the child had no memory of the entire two hour incident.
 

 82. The symptom of the child's dissociation shows he is experiencing a severe emotional crisis, which results in him removing an incident altogether from his memory. A significant concern is that if the minor child were mistreated he could not report it.
 

 ....
 

 85. After May 2015, on at least three separate occasions the minor child was injured while [Mr. Summerville] failed to follow the Safety Rules and other recommendations of the minor child's psychologist. These include [Mr.
 

 *235
 
 Summerville] hitting the minor child, throwing or tackling the child to the ground although the child was not in danger of harming himself or others; physically pulling or dragging the minor child while the child was distraught; using excessive physical force; throwing a shoe at the minor child striking him in his head; refusing to allow the minor child to take his ten minute break when he was emotionally dysregulated; refusing to allow the minor child to call [Ms. Summerville] even though [Mr. Summerville] knows that [Ms. Summerville]'s call helps the minor child to use his adaptive calming strategies.
 

 86. Since May 2015, the minor child has begged his therapist for someone, such as his therapist, the Parenting Coordinator, the Judge or even the police, [to] make [Mr. Summerville] follow the Safety Rules. Following these physical confrontations with [Mr. Summerville], the minor child regressed in his therapeutic progress, was emotionally distraught at school, and caused the minor child to have difficulty transitioning to [Mr. Summerville]. Also, following physical confrontation with [Mr. Summerville], at times the minor child became more susceptible to environmental triggers, such as a firm voice, feeling restrained, or
 
 *894
 
 discussions which he perceived to be an argument, which then led to aggressive outbursts by the child.
 

 87. Since the entry of the last Order, there have been several incidents of [Mr. Summerville] failing to abide by the school's protocols including the child's individualized education plan (IEP). For instance, after the 2015 order [Mr. Summerville] has withheld designated rewards expected by the minor child because the minor child moved himself to a low stimulus environment to perform his calming techniques after a triggering event. [Mr. Summerville] did this even though the school's Behavior Intervention Plan calls for the child to use this exact strategy. The child became confused when teachers, school behavior specialists, his therapist, and [Ms. Summerville] congratulated and validated him for independently calming himself
 
 *236
 
 during that triggering event, but his father punished him for it by refusing to provide an earned reward.
 

 Mr. Summerville does not challenge any of the above-quoted findings. Therefore, they are binding on appeal.
 
 See
 

 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").
 

 The court's unchallenged findings established that since the entry of the 1 May 2015 Order (1) Aaron's therapist stopped treating him due to Mr. Summerville's refusal to comply with-and be supportive of-therapeutic strategies and recommendations; (2) an altercation occurred in which, according to Aaron, Mr. Summerville hit him, kicked him, and threw him to the ground; (3) Aaron forgot this event the next day, tending to show that he had a dissociative disorder ; (4) at least two other incidents occurred during which Mr. Summerville used excessive physical force and refused to allow Aaron to call his mother; (5) Aaron has felt more susceptible to environmental triggers due to Mr. Summerville's physical confrontations with him; and (6) Mr. Summerville has not followed Aaron's IEP, causing Aaron to feel he was being punished when he used calming techniques but received no reward from Mr. Summerville.
 

 Contrary to Mr. Summerville's argument on appeal, these findings demonstrate that in making its changed circumstances determination the trial court did, in fact, properly consider the time period since the 1 May 2015 Order was entered. Moreover, the above-quoted findings clearly support the trial court's conclusion that Mr. Summerville's actions toward Aaron during this time period were having a negative effect on him. Therefore, we affirm the trial court's modification of custody in the 16 December 2016 Order.
 
 [2]
 

 II.
 
 Sua Sponte
 
 Modification of Child Support
 

 Mr. Summerville next argues that the trial court improperly made a
 
 sua sponte
 
 modification of his child support obligation as it existed in the 12 August 2013 Order because neither party had filed a motion to modify child support prior to the entry of the 16 December 2016 Order. We agree.
 

 *237
 
 The 16 December 2016 Order stated as follows with regard to the child support issue:
 

 20. Counsel for both parties shall exchange copies of each party's 2015 tax returns along with copies of at least three recent paystubs and any other documentation evidencing his/her income not later than November 28, 2016. [Ms. Summerville]'s counsel shall calculate and provide to [Mr. Summerville]'s counsel his child support obligation pursuant to Worksheet A of the presumptive North Carolina Child Support Guidelines not later than December 1. Beginning December 5, 2016, and on the 5th of each month thereafter, [Mr. Summerville] shall pay to [Ms. Summerville] monthly
 
 *895
 
 child support of that amount via direct deposit into an account designated by [Ms. Summerville]. Should [Mr. Summerville]'s counsel disagree with said child support calculation, she shall immediately notify [Ms. Summerville]'s counsel of her reasons for her objection and provide her own worksheet A calculation and the matter shall schedule [sic] to be heard before the undersigned Judge in December 2016. Otherwise, the amount determined by [Ms. Summerville]'s counsel is hereby ordered to be [Mr. Summerville]'s permanent child support obligation to [Ms. Summerville] for the support of the minor child.
 

 21. Each party shall submit an affidavit regarding all assets in which each party has any interest, as well as any debt balances in that party's name, (a net wort [sic] inventory) to the other party not later than November 20, 2016....
 

 N.C. Gen. Stat. § 50-13.7
 
 (a) provides in pertinent part that
 

 [e]xcept as otherwise provided in G.S. 50-13.7A, an order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested subject to the limitations of G.S. 50-13.10.
 

 N.C. Gen. Stat. § 50-13.7
 
 (a) (2017).
 

 *238
 
 In addition to the fact that neither of the parties had made a motion to modify Mr. Summerville's preexisting support obligation, no testimony or other evidence on the support issue was presented at the June 2016 or October 2016 hearings giving rise to the 16 December 2016 Order. Nevertheless, the trial court-despite the absence of a request from either party-included the above-quoted provisions changing Mr. Summerville's support obligation.
 

 This Court has repeatedly held that "[a] court is without authority to
 
 sua sponte
 
 modify an existing support order."
 
 Royall v. Sawyer
 
 ,
 
 120 N.C. App. 880
 
 , 882,
 
 463 S.E.2d 578
 
 , 580 (1995) (citation omitted);
 
 see also
 

 Miller v. Miller
 
 ,
 
 153 N.C. App. 40
 
 , 47,
 
 568 S.E.2d 914
 
 , 919 (2002) ("[A] court does not have the authority to
 
 sua sponte
 
 modify an existing support order." (citation omitted) );
 
 Bogan v. Bogan
 
 ,
 
 134 N.C. App. 176
 
 , 179,
 
 516 S.E.2d 641
 
 , 643 (1999) (trial court was without authority to modify child support obligation absent existence of motion before it);
 
 Smith v. Smith
 
 ,
 
 15 N.C. App. 180
 
 , 183,
 
 189 S.E.2d 525
 
 , 526 (1972) (trial court erred in modifying child custody and support where only question before court concerned alimony).
 

 Our Supreme Court recently discussed the continuing jurisdiction possessed by trial courts in child support proceedings in
 
 Catawba County v. Loggins
 
 ,
 
 370 N.C. 83
 
 ,
 
 804 S.E.2d 474
 
 (2017). In
 
 Loggins
 
 , a mother and father had signed a Voluntary Support Agreement and Order in 1999 (the "1999 VSA") agreeing that the father would not make any payments to the mother but would instead reimburse the State for the cost of public assistance paid on behalf of his two children.
 

 Id.
 

 at 83
 
 ,
 
 804 S.E.2d at 476
 
 . In 2001, the mother and father signed a second Voluntary Support Agreement and Order (the "2001 VSA"). The parties attached to this document a child support worksheet listing the father's gross monthly income. In the 2001 VSA, the father agreed to pay a monthly sum in child support to the mother and a monthly reimbursement to the State for the amount he had previously neglected to pay. After it was signed by the parents, the 2001 VSA was approved by the court.
 

 Id.
 

 at 83
 
 ,
 
 804 S.E.2d at 476
 
 .
 

 The father failed to make several payments after entry of the 2001 VSA, and he was in arrears by 2007.
 

 Id.
 

 at 83
 
 ,
 
 804 S.E.2d at 476
 
 . In 2014, the father moved to set aside the 2001 VSA pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, contending that the trial court had lacked jurisdiction to enter the consent order. He asserted that
 
 N.C. Gen. Stat. § 50-13.7
 
 (a) required the filing of a motion in the cause by a party in order for the trial court to possess jurisdiction to modify a child support obligation. The trial court agreed, finding that "there was no
 
 *239
 
 precipitating motion filed by plaintiff or on her behalf, nor was there any proof of a change in circumstances;
 
 *896
 
 therefore, the order resulting from the 2001 VSA was void."
 

 Id.
 

 at 87
 
 ,
 
 804 S.E.2d at 477
 
 .
 

 Our Supreme Court reversed the trial court's ruling, holding that the court had improperly construed
 
 N.C. Gen. Stat. § 50-13.7
 
 (a). The Supreme Court ruled the statute's requirement that a motion in the cause be filed was "directory rather than mandatory."
 

 Id.
 

 at 94
 
 ,
 
 804 S.E.2d at 482
 
 . "[C]onsequently, the absence of a motion to modify a child support order does not divest the district court of jurisdiction to act under the purview of the statute."
 

 Id.
 

 at 94
 
 ,
 
 804 S.E.2d at 482
 
 .
 

 The Court explained that the primary purpose of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a) is "to make the court aware of important new facts unknown to the court at the time of the prior custody decree ...."
 

 Id.
 

 at 96
 
 ,
 
 804 S.E.2d at 483
 
 (citation and quotation marks omitted). The Court determined that this purpose was satisfied by the 2001 VSA. Thus, the Supreme Court concluded, "a VSA submitted to the district court without ... a motion [in the cause] still serves the purpose" of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a), including "the statutory provision requiring a showing of a change in circumstances in order for a child support order to be modified."
 

 Id.
 

 at 97
 
 ,
 
 804 S.E.2d at 483
 
 .
 

 In a concurring opinion joined by Justice Ervin, Chief Justice Martin stated that "the majority's reasoning should be read narrowly."
 

 Id.
 

 at 98
 
 ,
 
 804 S.E.2d at 484
 
 (Martin, C.J., concurring).
 

 [I]f the majority ruling is read to permit even sua sponte modifications, it would disturb several decades of Court of Appeals precedent that domestic relations parties and social services agencies throughout North Carolina have presumably come to rely on.
 
 See
 

 Royall v. Sawyer
 
 ,
 
 120 N.C. App. 880
 
 , 882,
 
 463 S.E.2d 578
 
 , 580 (1995) (concluding that a child support agreement could not be modified without a motion to modify the agreement);
 
 Kennedy v. Kennedy
 
 ,
 
 107 N.C. App. 695
 
 , 703,
 
 421 S.E.2d 795
 
 , 799 (1992) (noting that a district court may modify a custody order only upon a motion by either party or by anyone interested);
 
 Smith v. Smith
 
 ,
 
 15 N.C. App. 180
 
 , 182-83,
 
 189 S.E.2d 525
 
 , 526 (1972) (holding that it was error for the trial court to modify a custody and support order when the only question before the trial court at the time was alimony).
 

 .... [B]y focusing on continuing jurisdiction, the majority ducks the real issue: whether, in the absence of a motion or
 
 *240
 
 its functional equivalent, a district court has the power to modify a child support order, or instead lacks the power to do so unless and until it receives a request from an interested party to modify the order.
 

 Id.
 
 at 99,
 
 804 S.E.2d at 485
 
 (citations omitted).
 

 This Court has not previously addressed in a published opinion the issue raised by the concurring opinion in
 
 Loggins
 
 -that is, whether
 
 Loggins
 
 should be construed as implicitly overruling the long line of cases from this Court prohibiting the
 
 sua sponte
 
 modification of child support orders. However, we recently addressed this precise issue in an unpublished opinion.
 

 In
 
 Mills v. Davis
 
 , --- N.C. App. ----,
 
 808 S.E.2d 519
 
 ,
 
 2017 WL 6460000
 
 , 2017 N.C. App. LEXIS 1047 (2017) (unpublished), a custody order was entered by the trial court providing for legal and physical custody of the minor child to be shared equally by the mother and father. A year after the order was entered, the mother filed a motion to show cause and modify custody, asserting that the father had waived his right to custody of the child by failing to participate in her life.
 
 Id.
 
 at *1, 2017 N.C. App. LEXIS 1047, at *3. The trial court entered a custody order in which it modified
 
 sua sponte
 
 the existing child support order, requiring the father to claim the child as a dependent and requiring the parties to split the uninsured health expenses.
 
 Id.
 
 at *2, 2017 N.C. App. LEXIS 1047, at *5.
 

 On appeal, the mother argued that the trial court had erred by making a
 
 sua sponte
 
 modification of the original custody order's child support provisions. Distinguishing
 
 Loggins
 
 , this Court vacated the portion of the order containing the child support modification.
 

 *897
 
 Unlike the trial court in [
 
 Loggins
 
 ], which entered a consent order sought by both parents, the trial court in this case acted of its own volition, absent the consent, knowledge, or urging of Mother or Father. No consent order or pleading was filed in this case sufficient to satisfy the purposes of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a)....
 

 While we recognize, following [
 
 Loggins
 
 ], that the trial court had jurisdiction to modify the Custody Order, we hold that it did not have the power and authority to
 
 sua sponte
 
 modify a child support order entered in a separate civil action.
 
 See
 

 Ellis v. Ellis
 
 ,
 
 190 N.C. 418
 
 , 421,
 
 130 S.E. 7
 
 , 9 (1925) (holding that although a court retains jurisdiction over a case, it may still lack the power to grant the relief contained in its judgment);
 
 see also
 

 *241
 

 State ex rel. Hanson v. Yandle
 
 ,
 
 235 N.C. 532
 
 , 535,
 
 70 S.E.2d 565
 
 , 568 (1952) (holding that where the court is without authority its judgment is void and of no effect). Because the majority in [
 
 Loggins
 
 ] did not dispose of the necessity that a party satisfy the requirements of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a), and in light of the concurring justices' cautioned approach, we will not extend the Supreme Court's decision to give the trial court unfettered authority to modify custody orders
 
 sua sponte
 
 . To hold otherwise would disturb several decades of precedent on which domestic relations parties and social service agencies throughout North Carolina have presumably come to rely. ...
 

 Id.
 

 at *6-7
 
 , 2017 N.C. App. LEXIS 1047, at *16-17 (internal citations omitted).
 

 Unpublished opinions of this Court lack precedential authority.
 
 See
 
 N.C. R. App. P. 30(e)(3) (providing that "an unpublished decision ... does not constitute controlling legal authority"). Nevertheless, we believe
 
 Mills
 
 was correctly decided and reach a similar conclusion here.
 

 The present case is materially distinguishable from
 
 Loggins
 
 . The analysis in
 
 Loggins
 
 makes clear that the existence of the voluntary settlement agreement signed by the parties and submitted to the trial court played a central role in the Supreme Court's decision, providing an adequate substitute for a motion in the cause. Here, conversely, there was neither a motion in the cause nor a consent agreement in which one or both of the parties sought a modification of Mr. Summerville's child support obligation. Thus, the trial court's 16 December 2016 Order constitutes a classic case of a
 
 sua sponte
 
 modification of a child support order despite the absence of any acts sufficient to satisfy the purpose of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a).
 

 Had the Supreme Court in
 
 Loggins
 
 intended to express its disapproval of this Court's longstanding prohibition of the
 
 sua sponte
 
 modification of child support obligations, we believe it would have said so overtly. Therefore, we read
 
 Loggins
 
 as continuing to require
 
 some
 
 action by the parties in order to satisfy the underlying purpose of
 
 N.C. Gen. Stat. § 50-13.7
 
 (a). Accordingly, we vacate the portion of the trial court's 16 December 2016 Order modifying the preexisting child support obligation of Mr. Summerville.
 

 III. Appeal of Contempt Finding
 

 Mr. Summerville also seeks to challenge the trial court's decision to hold him in contempt. He asserts that (1) the court failed to make clear
 
 *242
 
 whether the contempt was civil or criminal; (2) the court's clarification in its 30 December 2016 Order of its prior contempt finding was an impermissible attempt to amend its previous order under Rule 60 ; and (3) violations of a parenting coordinator's orders cannot form the basis for a finding of contempt.
 

 As an initial matter, we must determine whether we possess jurisdiction to consider this portion of Mr. Summerville's appeal. Appeals from criminal contempt orders are governed by N.C. Gen. Stat. § 5A-17, which states as follows:
 

 A person found in criminal contempt may appeal in the manner provided for appeals in criminal actions, except appeal from a finding of contempt by a judicial official inferior to a superior court judge is by hearing de novo before a superior court judge.
 

 N.C. Gen. Stat. § 5A-17(a) (2017). "This statute vests exclusive jurisdiction in the superior court to hear appeals from orders in the
 
 *898
 
 district court holding a person in criminal contempt."
 
 Michael v. Michael
 
 ,
 
 77 N.C. App. 841
 
 , 843,
 
 336 S.E.2d 414
 
 , 415 (1985),
 
 disc. review denied
 
 ,
 
 316 N.C. 195
 
 ,
 
 341 S.E.2d 577
 
 (1986).
 

 Thus, "in criminal contempt matters, appeal is from the district court to the superior court. ... In civil contempt matters, appeal is from the district court to this Court."
 
 Brooks v. Jones
 
 ,
 
 121 N.C. App. 529
 
 , 530,
 
 466 S.E.2d 344
 
 , 345 (1996) (internal citations omitted). Accordingly, we must determine whether the trial court's finding of contempt here was criminal or civil in nature.
 

 [W]e note that contempt in this jurisdiction may be of two kinds, civil or criminal, although we have stated that the demarcation between the two may be hazy at best. Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties. A major factor in determining whether contempt is criminal or civil is the purpose for which the power is exercised. Where the punishment is to preserve the court's authority and to punish disobedience of its orders, it is criminal contempt. Where the purpose is to provide a remedy for an injured suitor and to coerce compliance with an order,
 
 *243
 
 the contempt is civil. The importance in distinguishing criminal and civil contempt lies in the difference in procedure, punishment and right of review.
 

 Bishop v. Bishop
 
 ,
 
 90 N.C. App. 499
 
 , 503,
 
 369 S.E.2d 106
 
 , 108 (1988) (citation and emphasis omitted).
 

 The trial court's 16 December 2016 Order contained a handwritten paragraph that stated as follows:
 

 23. [Mr. Summerville] may purge himself of his multiple acts of contempt detailed above by paying one fine of $500 within 10 days hereof and by complying with this order and with all other orders in this action which remain in effect hereafter.
 

 In its 30 December 2016 Order, the trial court stated the following in seeking to clarify its prior finding of contempt against Mr. Summerville:
 

 The order of 12/16/16 is amended to add additional language in paragraph 23: "The Court finds that civil contempt does not provide a remedy for future compliance issues, and that the change of custody ordered herein will resolve future issues of noncompliance; accordingly, the Court finds that criminal contempt is appropriate and that [Mr. Summerville] is in criminal contempt, due to the multiple acts of wilful [sic] and deliberate disregard of and violation of the prior orders as detailed above, which findings support an order of criminal contempt beyond a reasonable doubt, and the Court so finds and orders."
 

 In Paragraph No. 23 of the 16 December 2016 Order, the trial court imposed a fine on Mr. Summerville, which is generally associated with
 
 criminal
 
 contempt.
 
 See
 

 Bishop
 
 ,
 
 90 N.C. App. at 504
 
 ,
 
 369 S.E.2d at 109
 
 (holding that a fine is generally "punitive when it is paid to the court" and therefore indicates a finding of criminal contempt (citation omitted) ). However, the fine was imposed as part of a purge condition, which is indicative of a finding of
 
 civil
 
 contempt.
 
 See
 

 id.
 
 at 504,
 
 369 S.E.2d at 109
 
 ("[T]he addition of a 'purge' clause would render even a determinate jail sentence civil in nature ...." (citation omitted) ). The trial court then clarified its intent in its 30 December 2016 Order, stating its determination that criminal-rather than civil-contempt was appropriate in light of Mr. Summerville's prior actions.
 

 Therefore, because the trial court ultimately concluded that Mr. Summerville should be held in criminal contempt, we lack jurisdiction
 
 *244
 
 over this portion of his appeal as his sole recourse was an appeal to superior court.
 
 See
 

 Michael
 
 ,
 
 77 N.C. App. at 843
 
 ,
 
 336 S.E.2d at 415
 
 (dismissing appeal of criminal contempt order by district court due to lack of appellate jurisdiction).
 

 IV. Reasonableness of Attorneys' Fees Award
 

 In his final argument, Mr. Summerville contends that the trial court erred by
 
 *899
 
 awarding attorneys' fees to Ms. Summerville. He argues that the court (1) did not possess statutory authority to award attorneys' fees stemming from its finding of criminal contempt; and (2) failed to make the requisite findings of reasonableness in connection with the fees awarded for Ms. Summerville's defense of his motion to modify custody.
 

 This Court has held that "[i]n order to award attorney's fees in an action involving custody or support of a minor child, the trial court is required to gather evidence and make certain findings of fact."
 
 Davignon v. Davignon
 
 ,
 
 245 N.C. App. 358
 
 , 365,
 
 782 S.E.2d 391
 
 , 396 (2016) ;
 
 see also
 

 Burr v. Burr
 
 ,
 
 153 N.C. App. 504
 
 , 506,
 
 570 S.E.2d 222
 
 , 234 (2002) (holding that "award of attorney's fees is not left to the court's unbridled discretion; it must find facts to support its award" (citation omitted) ). "The trial court must first determine if the party moving for attorney's fees has satisfied the statutory requirements for an award pursuant to
 
 N.C. Gen. Stat. § 50-13.6
 
 ."
 
 Davignon
 
 ,
 
 245 N.C. App. at 365
 
 ,
 
 782 S.E.2d at 396
 
 .
 

 N.C. Gen. Stat. § 50-13.6
 
 states as follows:
 

 In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding; provided however, should the court find as a fact that the supporting party has initiated a frivolous action or proceeding the court may order payment of reasonable attorney's fees to an interested party as deemed appropriate under the circumstances.
 

 N.C. Gen. Stat. § 50-13.6
 
 (2017).
 

 *245
 
 Thus, based on this statute, the trial court is required to find "that the party seeking the award is (1) an interested party acting in good faith and (2) has insufficient means to defray the expense of the suit."
 
 Cobb v. Cobb
 
 ,
 
 79 N.C. App. 592
 
 , 595,
 
 339 S.E.2d 825
 
 , 828 (1986) (citation omitted). Moreover, in addition to the findings required by the express terms of
 
 N.C. Gen. Stat. § 50-13.6
 
 , this Court has also mandated that certain other findings be made in order to ensure that the amount of fees awarded is reasonable.
 

 Because [N.C. Gen. Stat. §] 50-13.6 allows for an award of
 
 reasonable
 
 attorney's fees, cases construing the statute have in effect annexed an additional requirement concerning reasonableness onto the express statutory ones. ... Namely, the record must contain additional findings of fact upon which a determination of the requisite reasonableness can be based, such as findings regarding the nature and scope of the legal services rendered, the skill and time required, the attorney's hourly rate, and its reasonableness in comparison with that of other lawyers.
 

 Id.
 

 at 595
 
 ,
 
 339 S.E.2d at 828
 
 (internal citations omitted). "When the statutory requirements have been met, the
 
 amount
 
 of attorney's fees to be awarded rests within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion."
 
 Burr
 
 , 153 N.C. App. at 506,
 
 570 S.E.2d at 234
 
 (citation and quotation marks omitted).
 

 The trial court's 20 December 2016 order made the following pertinent findings of fact in support of its award of attorneys' fees.
 

 9. Paragraph 7 of [Mr. Summerville]'s March 2016 Motion to Modify Custody included multiple allegations which [Mr. Summerville] alleged constituted a substantial change in circumstances warranting a modification of custody, which he failed to prove or this Court did not find to be credible. These included that:
 

 a. "[T]he minor child has spent an increasing amount of time out of the classroom due to the interventions by [Ms. Summerville] and/or [Parent Coordinator]. The minor child's school performance has suffered enormously during the last school year as a result
 
 *900
 
 of these interventions, and these interventions have caused previously resolved behavioral issues to re-surface and escalate."
 
 *246
 
 b. The minor child had been "forced to miss church youth group, Cub Scouts and other time with [Mr. Summerville] doing the varied activities [Mr. Summerville] participates in with the minor child due to interventions by [Ms. Summerville] and/or PC[,]" which caused "the minor child's anxiety and behavioral issues [to increase] both at home and in school."
 

 c. ''The minor child has had no less than twelve (12) instances of fecal incontinence" due to medications he takes which [Ms. Summerville] manages with the support of the Parenting Coordinator.
 

 d. "[T]he minor child has been allowed, encouraged and/or ordered to call [Ms. Summerville] when he disagrees with [Mr. Summerville], and has been encouraged to defy [Mr. Summerville]'s authority while the minor child is in [Mr. Summerville]'s care, causing enormous behavioral issues to escalate beyond what has been the norm for this minor child."
 

 e. "[Ms. Summerville] and Parent Coordinator consistently question [Mr. Summerville]'s parenting of the minor child, at times through the minor child himself" and that "[s]uch behavior has increased the minor child's already existent anxiety issues."
 

 10. These allegations were proven to be untrue after the extensive efforts of [Ms. Summerville]'s counsel, including deposing [Mr. Summerville], preparing for and attending pretrials, drafting and arguing the order and this hearing on attorney fees, as well as in the final trial on these issues, which occurred over six days of trial in June and October 2016.
 

 11. [Ms. Summerville] incurred significant legal fees in defending against [Mr. Summerville]'s Motion to Modify Custody, as well as in the final trial on these issues, which occurred over six days of trial in June and October of 2016.
 

 *247
 
 12. Pursuant to the Affidavit of Attorney's Fees submitted by [Ms. Summerville]'s previous counsel, Melissa Averett, [Ms. Summerville] had incurred attorney's fees of in excess of $18,000 with Averett Family Law since March 4, 2016.
 

 13. Pursuant to the Affidavit of Attorney's Fees and the Addendum to Affidavit of Attorney's Fees submitted by [Ms. Summerville]'s current counsel, [Ms. Summerville] has incurred attorney's fees of at least $87,118 to Gabriela J. Matthews & Associates, P.A. since March 4, 2016 as of November 30, 2016. She has been in court on three separate appearances since that day and expended additional fees thereafter through the present date.
 

 14. In total, [Ms. Summerville] has incurred attorney fees in excess of $104,070 since March 4, 2016 thru [sic] November 20, 2016. After this hearing today, [Ms. Summerville] will have current outstanding legal bills in excess of $80,000.
 

 15. Some of [t]he services rendered by counsel were reasonable given the motion filed by [Mr. Summerville], his failure to follow the Court's prior Orders, and the impact his actions had on the minor child. Further, the rates charged by said counsel were reasonable given the level of expertise and experience of both attorneys and common curate [sic] with the fees charged by attorneys practicing family law in this area. The award herein set forth is for the reasonably necessary portion of such time spent.
 

 16. [Ms. Summerville] is an interested party and has acted in good faith in defending against [Mr. Summerville]'s motion and pursuing a custody modification given [Mr. Summerville's] actions.
 

 17. [Ms. Summerville] submitted a sworn affidavit, filed with this Court, in which she affirmatively pled that she does not have the ability to defray her extensive legal fees. In her affidavit, [Ms. Summerville] fully disclosed to the Court all of her assets and debts as well as her income. [Ms. Summerville] has also incurred significant credit card debt in
 
 *901
 
 order to pay
 
 *248
 
 some of those legal fees. However, she has no ability to pay her outstanding legal fees given her income and current net worth. [Ms. Summerville] is without sufficient means with which to defray the expenses of this suit. Therefore, [Ms. Summerville] is entitled to reimbursement of her legal fees pursuant to N.C.G.S. § 50-13.6.
 

 ....
 

 19. [Mr. Summerville] should be ordered to pay the portion of [Ms. Summerville]'s reasonable attorney fees ... set forth below pursuant to N.C. Gen. Stat. 50-13.6.
 

 Based on these findings, the trial court ordered Mr. Summerville to pay Ms. Summerville's attorney "the sum of $20,220 as attorney's fees" and "the additional sum of $22,000 by paying her $1000 per month for the next 24 [sic] months beginning 2/1/17."
 

 As noted above, Mr. Summerville initially contends that the trial court erred by awarding attorneys' fees in connection with the court's decision to hold him in criminal contempt. However, as established by the above-quoted findings, the order makes clear that the award of attorneys' fees was instead based on Ms. Summerville's defense of Mr. Summerville's motion to modify custody, which is expressly authorized under
 
 N.C. Gen. Stat. § 50-13.6
 
 .
 

 Mr. Summerville next argues that the trial court's order lacked the required findings of reasonableness. Specifically, he contends that the trial court failed to make specific findings concerning (1) the ability of Ms. Summerville to defray the cost of the suit; (2) whether she acted in good faith; (3) her lawyer's skill; (4) her lawyer's hourly rate; and (5) the nature and scope of the legal services rendered. We disagree.
 

 Finding Nos. 11, 12, 13, and 14 are supported by Ms. Summerville's affidavit and the evidence of record. Finding No. 15 establishes that the trial court considered the relevant affidavits and determined that the rates charged by her counsel were reasonable based on the level of expertise and experience of her attorneys and in light of the fees charged by comparable attorneys in the geographic area.
 

 Moreover, Finding No. 16 sets out the trial court's determination that Ms. Summerville was an interested party acting in good faith, and Finding No. 17 contains the court's finding that she had insufficient means to defray the expenses of the action. Thus, we are satisfied that the trial court's findings were sufficient to support its award of attorneys' fees to
 
 *249
 
 Ms. Summerville pursuant to
 
 N.C. Gen. Stat. § 50-13.6
 
 .
 
 See
 

 Hennessey v. Duckworth
 
 ,
 
 231 N.C. App. 17
 
 , 25,
 
 752 S.E.2d 194
 
 , 200 (2013) (holding that trial court's findings in connection with attorneys' fees award were supported by plaintiff's affidavits and were sufficient to justify award of fees to plaintiff).
 

 Conclusion
 

 For the reasons stated above, we (1) affirm the portion of the trial court's 16 December 2016 Order modifying child custody; (2) vacate the portion of the trial court's 16 December 2016 Order modifying child support; (3) dismiss Mr. Summerville's appeal of the contempt findings contained in the 16 December 2016 and 30 December 2016 Orders; and (4) affirm the trial court's 20 December 2016 Order awarding attorneys' fees.
 

 AFFIRMED IN PART; VACATED IN PART; DISMISSED IN PART.
 

 Chief Judge McGEE and Judge TYSON concur.
 

 [1]
 

 A pseudonym is used throughout this opinion to protect the privacy of the minor child and for ease of reading.
 

 [2]
 

 We also reject Mr. Summerville's argument that Judge Long simply relied on Judge Bryan's stated belief that a violation of the 1 May 2015 Order going forward would constitute a substantial change in circumstances. To the contrary, we interpret Judge Long's 16 December 2016 Order as containing his own determination on this issue.