IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-266

No. COA21-274

Filed 19 April 2022

Randolph County, No. 19 CVD 1606

BRIAN R. TURNER, Plaintiff,

v.

LINDSEY OAKLEY (now LEGGE), Defendant.

Appeal by Plaintiff from orders entered 31 July 2020 and 17 August 2020 by Judge Lee W. Gavin in Randolph County District Court. Heard in the Court of Appeals 25 January 2022.

*Lake Tillery Law, by Brooke M. Crump, for Plaintiff-Appellant.*

*Cathy R. Stroupe for Defendant-Appellee.*

COLLINS, Judge.

¶ 1 This appeal stems from Plaintiff's August 2018 motion to modify custody of the parties' son, Matthew.[1] Plaintiff argues that the trial court lacked jurisdiction to enter an order modifying custody, made a finding of fact not supported by substantial evidence, failed to find a nexus between the substantial change in circumstances and Matthew's welfare, failed to make sufficient findings concerning evidence of child

---

[1] We use a pseudonym to protect the identity of the minor.

abuse, and abused its discretion. After careful review, we affirm.

## I. Background

¶ 2        The parties are the parents of Matthew, a minor child born in March 2010. The parties were never married.

¶ 3        On 15 April 2013, Plaintiff filed a complaint in Rockingham County District Court seeking primary custody of Matthew. On 26 November 2013, the district court entered an order granting primary custody to Defendant and secondary custody to Plaintiff ("2013 Custody Order"). This order awarded the parties physical custody of Matthew as follows: Plaintiff had physical custody on "all weekends that [Defendant] must work"; Defendant had physical custody the weekend immediately following; and Plaintiff had physical custody "for the next two successive weekends immediately following[.]" The 2013 Custody Order also included a holiday schedule granting each party physical custody "for as close to equal time [as] is practical," and a provision permitting each party custody for vacation purposes upon advance notice.

¶ 4        On 10 August 2018, Plaintiff filed an Ex Parte Motion for Emergency Custody and Modification of Prior Order on Custody ("Custody Motion") seeking temporary and permanent custody of Matthew. Plaintiff alleged there had been a substantial and material change in circumstances affecting Matthew's welfare since the entry of the 2013 Custody Order as follows:

          a.   Since the school year ended, [Matthew] has primarily

resided with Plaintiff.

b. On March 29, 2018, Defendant called Plaintiff in a rage and said that she couldn't do anything for [Matthew] while screaming at [Matthew] to go live with [D]efendant if that's what [Matthew] wanted.

c. [Matthew] has expressed concern that Defendant does not have time for him during the school week due to her busy schedule in the evenings including going to work and school, whereas she has enrolled in school on four different occasions.

d. Defendant has not been keeping up with [Matthew's] homework and has trouble communicating with teachers.

e. Defendant currently has [Matthew] in therapy due to the strained relationship between Defendant and [Matthew].

f. The current visitation schedule is not in the best interest of [Matthew] due to Defendant's current mental state, Defendant's threats to [Matthew], and Defendant's strained relationship with [Matthew].

g. Plaintiff has married and [Matthew] has a strong familial bond with both Plaintiff and Plaintiff's wife.

h. Modifying the schedule to give specific visitation times for Defendant's visitations, and giving Plaintiff primary custody, will promote consistency and stability for [Matthew], which is in the best interests of [Matthew].

¶ 5      The trial court granted Plaintiff emergency full custody of Matthew by an ex parte order. Following a hearing on 29 August 2018, the trial court entered an order on 14 December 2018 granting Plaintiff "temporary primary physical and legal custody" of Matthew and awarding Defendant "supervised visitation at a time,

location, frequency, and duration mutually agreed upon by the parties" ("Initial Emergency Custody Order").

¶ 6 Defendant moved the court on 11 January 2019 to establish a visitation schedule ("Visitation Motion"). Defendant alleged that Plaintiff had "systematically denied" her requests for visitation under the Initial Emergency Custody Order and refused to communicate with Defendant.

¶ 7 On 8 February 2019, the trial court entered a Temporary Memorandum of Judgment/Order ("First Memorandum Order") incorporating the parties' agreement to permit Defendant certain supervised visitation with Matthew in person and by phone. On 5 March 2019, the trial court entered a Temporary Order adjusting the time at which Defendant was to have telephone visitation with Matthew.

¶ 8 The trial court entered an additional Temporary Memorandum of Judgment/Order on 5 April 2019 ("Second Memorandum Order"), containing another agreement by the parties to permit Defendant supervised visitation with Matthew in person and by phone. The Second Memorandum Order also provided that "[t]his matter is temporary in nature, entered without prejudice to either party" and ordered the case be transferred to Randolph County District Court. On 9 May 2019, the Rockingham County District Court entered a Temporary Order containing the same terms as the Second Memorandum Order.

¶ 9 Defendant responded to Plaintiff's Custody Motion on 9 May 2019. The

Randolph County District Court received the case file on 16 July 2019 and noticed a hearing on Plaintiff's Custody Motion. The trial court heard Plaintiff's motion on 8 November 2019, 18 February 2020, and 7 July 2020.

¶ 10 On 31 July 2020, the trial court entered a Temporary Order directing Plaintiff to bring Matthew to Defendant's home that evening, pending entry of a final order ("July 2020 Temporary Order"). Plaintiff filed a notice of appeal from the July 2020 Temporary Order.[2]

¶ 11 The trial court entered a Custody Order on 17 August 2020 ("August 2020 Custody Order") which included the following pertinent findings of fact:

> 5. That a Court Order which included provisions for child custody of [Matthew] was entered on or about November 26, 2013, in Rockingham County, North Carolina District Court . . . . In said Order, Defendant was granted primary custody, control, and tuition of [Matthew], with Plaintiff exercising certain visitation. . . .
>
> 6. That thereafter, Defendant relocated to Guilford County, North Carolina and continued to be the primary caregiver of [Matthew].
>
> 7. That Defendant's brother died unexpectedly in an automobile accident in 2017. Defendant and her brother were very close and Defendant had a hard time dealing with his death.
>
> 8. That on August 8, 2018, Defendant was to pick up [Matthew] following summer visitation with Plaintiff. Defendant was under continued stress from dealing with

---

[2] Plaintiff raised no arguments concerning the July 2020 Temporary Order in his brief.

her brother's death and was dealing with anxiety and depression. She had suffered panic attacks for the two weeks prior to August 8, 2018. Defendant had concerns about her ability to care for [Matthew], and out of that concern, Defendant asked Plaintiff's wife to keep [Matthew]. Plaintiff's wife testified that Defendant had developed a trust with Plaintiff's wife and Plaintiff's wife agreed to keep [Matthew].

9. That after speaking with Plaintiff's wife on August 8, 2018, Defendant voluntarily committed herself at Wesley Long Hospital, Greensboro, North Carolina. Contrary to the testimony of Plaintiff's wife that they did not learn of the hospitalization until the next week, the Defendant's husband informed the Plaintiff on August 9th of Defendant's hospitalization. Defendant was released from Wesley Long Hospital on August 16, 2018.

10. That on August 10, 2018, Plaintiff obtained an *ex parte* custody Order in Rockingham County District Court. A return hearing was held on August 29, 2018. At the hearing, the Court entered [the Initial Emergency Custody Order] granting Plaintiff temporary custody and allowing Defendant supervised visitation to be mutually agreed upon by the parties.

11. Following the August 29, 2018 hearing Defendant was in a state of shock at losing custody of [Matthew]. She was assessed by Dr. Alexander Eksir ("Dr. Eksir"), a board-certified licensed psychiatrist, who diagnosed her with a severe episode of depression with psychotic symptoms. Defendant voluntarily admitted herself to Moses Cone Hospital on August 31, 2018 and was discharged on September 5, 2018. Upon her discharge, Defendant was stable and substantially improved.

12. That Defendant has followed up with Dr. Eksir who described Defendant as a model patient. Dr. Eksir testified that Defendant suffered a major depressive disorder that is in remission. Dr. Eksir described Defendant as cured.

He testified that she is down to earth, involved and engaged with no impairment. He has no concerns that Defendant is a danger to herself or anyone else. She had no problem with the birth of her second child. Dr. Eksir has no concern about children being in Defendant's care.

13. That notwithstanding the fact that the [Initial Emergency Custody Order] provided for Defendant to have supervised visitation with [Matthew], Plaintiff allowed Defendant to have unsupervised visits with [Matthew] during Thanksgiving 2018 and at Defendant's home for Christmas 2018. These visits went very well.

14. That Defendant asked Plaintiff many times for expanded visits and a visitation schedule which Plaintiff refused. That Plaintiff filed [the Visitation Motion] on January 11, 2019 asking the (Rockingham County, North Carolina) Court to set a visitation schedule. The parties were in Court on February 8, 2019 but the Court was unable to conduct a full hearing on Defendant's motion. The parties reached [the First Memorandum Order] for a supervised visitation schedule, under which Defendant was to have supervised visitation every Friday and Saturday in Guilford County, North Carolina.

15. That Defendant noticed the matter back on for a review of the [Initial Emergency Custody Order] in Rockingham County District Court and the matter was set for hearing on April 5, 2019.

16. That the parties returned to (Rockingham County, North Carolina) Court on April 5, 2019 for the Court to conduct a hearing and review of the[Initial Emergency Custody Order]. Again, the Court was unable to conduct a full hearing on said review and an oral motion was made to change venue to Randolph County, North Carolina since neither party now lived in Rockingham County, North Carolina. [The Second Memorandum Order] was entered under which, after two (2) Saturday visitations, Defendant was to exercise supervised visitation every Sunday from

1:00 p.m. to 5:00 p.m. at Freedom Park, Liberty, Randolph County, North Carolina. The (oral) change of venue was then granted and the matter was transferred to Randolph County, North Carolina.

17. That since April 5, 2019, except for very limited exceptions, Plaintiff has only allowed Defendant supervised visitation with [Matthew] at Freedom Park, no matter the weather or the fact that Defendant had given birth to another child, and that child should not be in the open elements for four hours.

18. That Plaintiff's main complaint regarding the visitation between Defendant and [Matthew] was that the half-siblings were competitive with each other during said visitation, and that Defendant should only be the person visiting with [Matthew], despite the fact that [Matthew] had a step-father and half-siblings that only saw him 4 hours each week. That despite repeated requests from Defendant, the Plaintiff refuses to allow any expanded visitation between Defendant and [Matthew] and no good cause has been shown for such refusal.

19. That the paternal grandmother, who supervised most of the visits between Defendant and [Matthew], testified that the visits went very well, that [Matthew] is very bonded to the Defendant, that he loves his mother, and that the only concern she expressed was that [Matthew] would not get "one-on-one" attention because there are other children in Defendant's home.

20. That Defendant remains gainfully employed with Moses Cone Hospital and that her work schedule allows her to be home all but 5-7 days per month.

Based upon the foregoing findings of fact, the trial court concluded that "since the entry of the [2013 Custody Order] there has been a substantial change of circumstances that affect[s] the general welfare of" Matthew. The trial court further

concluded that "it is in the best interest of [Matthew] that the [2013 Custody Order] be modified and that the parties shall have joint legal custody of" Matthew and it "is in the best interest, safety and general welfare of [Matthew that his] primary care, custody and control be placed with the Defendant, with Plaintiff exercising certain visitation with [Matthew] as more fully stated in the decretal portion of this Order." The trial court granted the parties joint legal custody and Defendant primary physical custody. The trial court awarded Plaintiff visitation with Matthew as follows: (1) three weekends of each month, from 5 p.m. Friday until 7 p.m. Sunday; (2) a 30-day period during the school summer recess; (3) Father's Day, a portion of Matthew's birthday, and every other Christmas, Thanksgiving, and Easter holiday; and (4) other periods as the parties agree. Plaintiff gave notice of appeal from the August 2020 Custody Order.

## II.    Discussion

### A. Trial Court's Jurisdiction to Enter the August 2020 Custody Order

Plaintiff argues that the trial court lacked jurisdiction to enter the August 2020 Custody Order. Though Plaintiff did not raise this argument before the trial court, the issue of subject matter jurisdiction may be raised for the first time on appeal. *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006). We review this issue de novo. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

An existing order "for custody of a minor child may be modified or vacated at

any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-13.7(a) (2020). "[T]he jurisdiction of the court entering [a child custody] decree continues as long as the minor child whose custody is the subject of the decree remains within its jurisdiction." *Stanback v. Stanback*, 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975) (citations omitted).

¶ 15    Plaintiff asserts that the trial court was deprived of jurisdiction to enter the August 2020 Custody Order because his Custody Motion was no longer pending. Plaintiff contends that the trial court "overlooked the fact that multiple orders had been entered since Plaintiff filed" his Custody Motion.

¶ 16    Contrary to Plaintiff's assertion, until the August 2020 Custody Order, none of the trial court's orders finally resolved Plaintiff's claim for permanent custody in his Custody Motion. The 10 August 2018 ex parte order granted "emergency full custody" to Plaintiff and set the matter for a review hearing. The Initial Emergency Custody Order granted Plaintiff only "temporary primary physical and legal custody," with Defendant's visitation to be "mutually agreed upon by the parties." Following Defendant's Visitation Motion, the trial court entered the First Memorandum Order which set a schedule of visitation between Defendant and Matthew. The subsequent 5 March 2019 Temporary Order merely adjusted the time at which Defendant was to have telephone visitation with Matthew. This order noted that it embodied only a "temporary agreement as to custody and visitation, pending further hearing and/or

disposition by the Court." The Second Memorandum Order set a new schedule of in-person and telephonic visits between Defendant and Matthew and expressly specified that it was "temporary in nature, entered without prejudice to either party." The 9 May 2019 Temporary Order contained these same terms. Defendant filed a response to Plaintiff's Custody Motion on 9 May 2019 and the trial court listed Plaintiff's Custody Motion as one of the matters for hearing on three consecutive notices of hearing. At the beginning of the 8 November 2019 hearing, Counsel for Plaintiff answered affirmatively when the trial court inquired, "So you have a motion to modify, correct?"

¶ 17      Moreover, even if Plaintiff's Custody Motion was no longer technically pending, "the absence of a motion to modify . . . does not divest the district court of jurisdiction to act under the purview of" the modification provision in N.C. Gen. Stat. § 50-13.7(a). *Catawba Cnty. ex rel. Rackley v. Loggins*, 370 N.C. 83, 94, 804 S.E.2d 474, 482 (2017). "A primary purpose of a requirement to file a motion in order to modify" is to "make the court aware of important new facts unknown to the court at the time of the prior custody decree." *Id.* at 96, 804 S.E.2d at 483 (quotation marks and citation omitted). Where the conduct of the parties satisfies this purpose, no motion is required. *Summerville v. Summerville*, 259 N.C. App. 228, 241, 814 S.E.2d 887, 897 (2018). In the present case the parties amply apprised the trial court of new facts unknown at the time of the 2013 Custody Order: Plaintiff filed the Custody Motion, Defendant

filed a response, and the parties appeared for multiple hearings during which the trial court heard testimony.

¶ 18        The trial court was not deprived of jurisdiction to modify custody of Matthew and the August 2020 Custody Order is not void for lack of jurisdiction.

**B. Substantive Challenges to the August 2020 Custody Order**

¶ 19        Plaintiff also raises several substantive challenges to the August 2020 Custody Order. A "trial court's examination of whether to modify an existing child custody order is twofold." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003).

> The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If . . . the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.

*Id.*

¶ 20        "In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings." *Peters v. Pennington*, 210 N.C. App. 1, 12-13, 707 S.E.2d 724, 733 (2011) (citation omitted). "Substantial evidence is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Id.* at 13, 707 S.E.2d at 733 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). We review a trial court's decision in a child custody case for an abuse of discretion. *Id.* An abuse of discretion occurs only where "the court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Barton v. Sutton*, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266 (2002) (quotation marks and citation omitted).

### 1. *Finding Concerning Dr. Eksir's Testimony*

¶ 21        Plaintiff challenges the trial court's finding that "Dr. Eksir described Defendant as cured."

¶ 22        Dr. Eksir testified that when Defendant was discharged in the fall of 2018, her condition was not yet resolved but was stable and "substantially improved." Dr. Eksir explained that at a follow-up appointment, Defendant's condition was sufficiently improved to taper her off of some of the medication she had been prescribed during her hospitalization. Dr. Eksir testified that Defendant's major depressive disorder was in remission and defined "remission" as the point

> when medication that's provided or whatever treatment
> has provided full reconstitution of a person's mood such
> that they're able to function and behave and act and are
> existing without any ongoing symptoms of their psychiatric
> illness. It's essentially like, you know, cured so to speak.

According to Dr. Eksir, Defendant maintained stability after her discharge from the

hospital and her prognosis was "excellent." Dr. Eksir's testimony concerning Defendant's improvement is substantial evidence in support of the trial court's finding that Dr. Eksir "described Defendant as cured."

¶ 23 Plaintiff emphasizes that none of the medical records read at the hearing state that Defendant was "cured" and contends that "it is common knowledge that if you have to take medicine for something, then you are not 'cured.'" These arguments are misplaced because the trial court only found that Dr. Eksir "described Defendant as cured," a finding sufficiently supported by Dr. Eksir's testimony.

¶ 24 Without challenging any specific finding, Plaintiff also contends that the trial court gave "far too much weight" to Dr. Eksir's testimony concerning Defendant's current mental status. Plaintiff suggests that Dr. Eksir's testimony warranted less weight "considering that Dr. Eksir only sees the Defendant approximately every three months." This argument is unavailing because

> [a] trial judge passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. Issues of witness credibility are to be resolved by the trial judge. It is clear beyond the need for multiple citation that the trial judge, sitting without a jury, has discretion as finder of fact with respect to the weight and credibility that attaches to the evidence. . . . [I]t is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal.

*Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) (quotation marks,

brackets, and citations omitted). Plaintiff's argument is overruled.

### 2. *Nexus Between Change in Circumstances and Matthew's Welfare*

Plaintiff also argues that the trial court erred by failing to find a nexus between the substantial change in circumstances and Matthew's welfare and by failing to examine whether modification was in Matthew's best interests. We disagree.

"Unless the effect of the [substantial change in circumstances] on the children is 'self-evident,' the trial court must find sufficient evidence of a nexus between the change in circumstances and the welfare of the children." *Stephens v. Stephens*, 213 N.C. App. 495, 499, 715 S.E.2d 168, 172 (2011) (citing *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255-56).

The trial court made findings concerning Defendant's mental health difficulties, her improvement upon hospitalization and treatment, her successful visitation with Matthew, and her continued employment and flexible work schedule. The trial court's findings[3] show that Defendant's mental health crisis initially affected not only her ability to care for herself, but her ability to care for Matthew. The findings further show that Defendant improved following hospitalization and

---

[3] In his principal brief, Plaintiff challenges only the trial court's finding that "Dr. Eksir described Defendant as cured." The remaining unchallenged findings of fact are binding on appeal, *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), regardless of Plaintiff's belated attempt to challenge multiple additional findings in his reply brief, *see McLean v. Spaulding*, 273 N.C. App. 434, 441, 849 S.E.2d 73, 79 (2020) ("Under Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, where a party fails to assert a claim in its principal brief, it abandons that issue and cannot revive the issue *via* reply brief.").

treatment and consequently has been able to exercise successful visitation with Matthew. Based upon these findings, the trial court concluded that there had been a substantial change in circumstances that affected Matthew's welfare since entry of the 2013 Custody Order. The trial court then concluded that it was in Matthew's best interests to modify the 2013 Custody Order to award joint custody to the parties, with primary custody to Defendant.

¶ 28    The trial court complied with its duty to determine whether there was a substantial change in circumstances, whether that change in circumstances affected Matthew's welfare, and whether modification of custody was in Matthew's best interests, *Shipman*, 357 N.C. at 474, 586 S.E.2d at 253, and its findings reflect "sufficient evidence of a nexus between the change in circumstances and the welfare of" Matthew, *Stephens*, 213 N.C. App. at 499, 715 S.E.2d at 172.

### 3.  *Evidence of Child Abuse*

¶ 29    Plaintiff next argues that the trial court failed to make written findings concerning "allegations of child abuse" and "expert testimony . . . presented regarding the psychological abuse of" Matthew.

¶ 30    When determining the best interests of a child, the trial court

> shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party. An order for custody must include written findings of fact that reflect the consideration of

each of these factors and that support the determination of
what is in the best interest of the child.

N.C. Gen. Stat. § 50-13.2(a) (2020). "Any evidence of child abuse is of the utmost concern in determining whether granting custody to a particular party will best promote the interest and welfare of the child," and the trial court is obligated "to resolve any evidence of [abuse] in its findings of fact." *Dixon v. Dixon*, 67 N.C. App. 73, 78-79, 312 S.E.2d 669, 673 (1984).

¶ 31        In *Scott v. Scott*, the defendant argued that the trial court erred by failing to make detailed findings regarding child abuse. 157 N.C. App. 382, 387, 579 S.E.2d 431, 435 (2003). There was evidence that the plaintiff spanked the child, but there was "also evidence that the spanking did not inflict serious injury." *Id.* Additionally, the defendant "made no attempt to seek medical attention for the [c]hild, and there was no evidence that the spanking left more than temporary red marks." *Id.* This Court held that this evidence did not obligate the trial court to make specific findings concerning abuse. *Id.* (citing N.C. Gen. Stat. § 7B-101).

¶ 32        Here, though Plaintiff did not allege abuse in his Custody Motion, Plaintiff contends he introduced evidence of physical and psychological abuse. However, as in *Scott*, Plaintiff has not introduced evidence that the isolated incidents of spanking or yelling he identified either "created serious emotional damage to [Matthew] . . . evidenced by [Matthew's] severe anxiety, depression, withdrawal, or aggressive

behavior toward himself or others," N.C. Gen. Stat. § 7B-101(1)(e) (2020), or evidence of any "serious physical injury" or "substantial risk of serious physical injury," N.C. Gen. Stat. § 7B-101(1)(a), (b) (2020). Nor was there evidence that Plaintiff sought treatment for Matthew. To the contrary, Plaintiff testified that he did not have Matthew in therapy and he never thought Matthew needed to see a psychiatrist. Plaintiff points to Dr. Eksir's testimony, but Dr. Eksir merely gave a general definition of emotional abuse and confirmed that emotional abuse can occur in a parent-child relationship. The evidence presented at the hearing did not require the trial court to make specific written findings concerning abuse.

### 4. *Abuse of Discretion*

¶ 33    Plaintiff argues that the trial court abused its discretion by not granting primary custody to Plaintiff. Plaintiff also contends that there are "no reasons supporting Plaintiff having even less visitation time with [Matthew] than he did prior to the two years he had exclusive care, custody and control of [Matthew]." We disagree.

¶ 34    Both the 2013 Custody Order and the August 2020 Custody Order granted the parties joint custody and awarded primary custody to Defendant. The 2013 Custody Order awarded Plaintiff physical custody of Matthew from 5 p.m. Thursday to 5 p.m. Sunday on "all weekends that [Defendant] must work," Defendant would have physical custody the following weekend, and Plaintiff would again "exercise

secondary physical custody of his son for the next two successive weekends[.]" The August 2020 Custody Order awarded Plaintiff visitation on the first, second, and fourth weekend of each month from 5 p.m. Friday to 7 p.m. Sunday. Each order permitted Plaintiff to have vacation time with Matthew upon written notice and established holiday visitation schedules providing for approximately equal visitation between the parties.

¶ 35    The trial court's decision to adopt the custody arrangement in the August 2020 Custody Order was not "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Barton*, 152 N.C. App. at 710, 568 S.E.2d at 266 (quotation marks and citation omitted). The trial court's findings of fact reflect that Defendant experienced a mental health crisis in 2018 which adversely affected her ability to care for Matthew. Defendant took steps to address her mental health issues, including undergoing two voluntary commitments and engaging in extensive psychiatric treatment, upon which she significantly improved. Defendant subsequently had successful visitation with Matthew and remained gainfully employed.

¶ 36    The trial court's findings also reflect that Plaintiff had ongoing difficulties in co-parenting Matthew. The Initial Emergency Custody Order provided that "Defendant shall have supervised visitation at a time, location, frequency, and duration mutually agreed upon by the parties." The trial court found, however, that

"Defendant asked Plaintiff many times for expanded visits and a visitation schedule which Plaintiff refused." The trial court further found that after entry of the Second Memorandum Order, "except for very limited exceptions, Plaintiff . . . only allowed Defendant supervised visitation with Matthew [outdoors] at Freedom Park, no matter the weather or the fact that Defendant had given birth to another child, and that child should not be in the open elements for four hours." The trial court also found that Plaintiff's "main complaint regarding the visitation between Defendant and [Matthew] was that the half-siblings were competitive with each other" and Plaintiff desired for Defendant to be the only person visiting with Matthew, "despite the fact that [Matthew] had a step-father and half-siblings that only saw him 4 hours each week."

¶ 37     In light of these findings, the trial court did not abuse its discretion by entering the August 2020 Custody Order.[4]

### III.    Conclusion

¶ 38     The trial court had jurisdiction to modify the 2013 Custody Order, did not fail to find a nexus between the change in circumstances and Matthew's welfare, did not

---

[4] Plaintiff notes that in the August 2020 Custody Order, the trial court stated that "it is in the best interest and general welfare of [Matthew] that the Order entered on August 29, 2018, be modified as hereinbelow memorialized." No order was entered in this case on that date. However, where the trial court otherwise consistently referred to modification of the 2013 Custody Order, this singular erroneous reference does not demonstrate that the trial court abused its discretion.

fail to address evidence of abuse, and did not abuse its discretion. We thus affirm the

August 2020 Custody Order.

AFFIRMED.

Judges GORE and JACKSON concur.